Bernard WILSON, Petitioner-Appellant,

v.

Donald F. SCHNETTLER, Arthur E. Doll and Robert E. Waltz, Respondents-Appellees.

No. 12856.

United States Court of Appeals Seventh Circuit.

March 21, 1960.

James J. Doherty, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee, Charles R. Purcell, Jr., Chicago, Ill., Robert N. Caffarelli, Asst. U. S. Attys., Chicago Heights, Ill., of counsel.

Before SCHNACKENBERG , and KNOCH, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

Petitioner, Bernard Wilson, appeals in *forma pauperis* from an order of the district court dismissing his amended petition for declaratory judgment wherein he prayed for a determination of the legality of his arrest and search without a warrant by the respondent federal narcotics agents. In the event the court found the search and seizure in violation of the requirements of the Federal Rules of Criminal Procedure, 18 U.S.C.A., petitioner requested it to impound the seized narcotics and to perpetually enjoin respondents from testifying in respect thereto in a pending criminal proceeding in the Criminal Court of Cook County, Illinois.

The allegedly illegal arrest and search wherein respondents obtained narcotic drugs from the person of petitioner occurred on April 14, 1959, at 7:30 a. m. Wilson was thereafter indicted and charged by the Grand Jury of Cook County, Illinois, with the crime of Unlawful Possession of Narcotic Drugs. After his arraignment and plea of not guilty in the Criminal Court of Cook County, Illinois, that court denied petitioner's motion for suppression of the evidence obtained in the search and seizure.

Petitioner alleges that the following facts were developed at the hearing of the motion to suppress in the State court: The federal narcotics agents saw Wilson enter a certain building under surveillance where they had information that narcotic drugs were being sold. A short time later the agents observed him leaving the building. They then arrested and searched him without a warrant. The agents could not state under oath whether or not Wilson had narcotic drugs in his possession before he entered the building under surveillance.

Thereafter, petitioner, who is presently incarcerated in Cook County jail awaiting trial on the State charge, commenced the proceeding in the district court in question here.

Petitioner contends that the district court has jurisdiction of the subject matter of this proceeding under the court's "supervisory powers over federal law enforcement agencies." He relies on Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 294, 100 L.Ed. 233.

Decisive factual differences distinguish the Rea case from the instant proceeding. In Rea the tainted evidence was seized under invalid process of a federal court. There a United States commissioner issued the invalid warrant. The federal officials acted under color of the defective process. They disobeyed the Federal Rules of Criminal Procedure, promulgated by the Supreme Court and enacted as law by Congress.[1] A federal district court had previously ordered the suppression of the illegally obtained evidence in a then pending criminal action.

In the instant proceeding the arrest and search were without warrant. A State court has denied a motion to suppress the seized narcotics as evidence in a criminal action pending before it. There was no exertion of authority, lawful or otherwise, by a United States commissioner or by any official acting under color of federal judicial authority. No federal court has been asked to admit

1. Title 18 U.S.C.A., Chapter 237, § 3771 et seq., as amended, Rules of Criminal Procedure.

in evidence the narcotic drugs obtained by seizure. The contraband drugs are not in the possession or custody of an officer of a federal court.

This case squarely raises the question asked by the dissenting minority in Rea: "Would the Court's decision have been different had there been no search warrant at all?" 350 U.S. 214, at page 219, 76 S.Ct. 292, at page 295.

The foundation of the Rea decision lies in the power of the federal judiciary to supervise federal law enforcement agencies acting pursuant to federal process or orders of federal courts. Principles governing the scope and applicability of the exercise of federal judicial supervision over all federal judicial proceedings to the end of a fair and orderly administration of criminal justice have been developed and established by a line of leading decisions.[2]

The supervisory power, implemented by federal rules governing procedure and evidence, commands the exclusion as evidence of the fruits of invasions of federal constitutional immunities against unlawful detention and unreasonable searches and seizures. The sanctions of exclusion do not have constitutional stature; they are not a command of the Fourth or Fifth Amendment. The reach of federal judicial sanctions is limited by the boundaries of the federal judicial supervisory power. The sanction may, therefore, be wielded against all federal law enforcement agencies as, for example, the federal courts and their officers, United States Commissioners, or other federal officials, whenever these agencies or officers are acting pursuant to federal judicial authority.

■■■ Congress and the federal judiciary generally have refrained from interfering with the internal affairs of the States in the administration of justice,

subject to review by federal courts of any federal questions involved. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. The admissibility of evidence is a matter to be decided by the trial court where it is sought to be introduced in the light of constitutional principles and rules of evidence of the forum. The State court still has a right to protect all constitutional rights of the petitioner in ruling on the admissibility of evidence and in other ways upon the disposition of the case in that court. While searches and seizures or detentions, if unreasonable, may be in violation of the Constitution of the United States, the admission of unlawfully obtained evidence is not a denial of due process under the Fourteenth Amendment. See Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

■ Principles of noninterference in State criminal affairs have been predicated on constitutional grounds and considerations of policy in balancing federal and State interests. The distinction that the illegal evidence was obtained by the activities of State and not federal officials is not material. The misconduct of federal officers may subject them to criminal penalties.[3] Unless these officers act under color of judicial authority or order of the federal courts, they are not subject to the federal judicial supervisory power, and the sanctions wielded by this power cannot intrude to restrain their testimony in a State criminal trial.

Without repudiating established principles governing the application of judicial supervision, Rea has extended the scope of the discretionary authority. It permits this power, acting on officials subject to it, to reach contemplated evidence in a pending State criminal action. The Rea decision is predicated on the

2. See Wise v. Henkel, 1911, 220 U.S. 556, 31 S.Ct. 599, 55 L.Ed. 581; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; and Wolf v.

People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

3. Cf. Title 18 U.S.C.A. § 2236, Searches without warrant.

authority to exercise supervision over federal officials only insofar as these officials act under color of federal judicial authority and owe obedience to the federal rules. The facts and the legal authority on which the Rea decision is based do not permit the conclusion that the court thereby intended to assume jurisdiction over all activities of the federal law enforcement authorities. We do not interpret the Rea decision as indicating that the Supreme Court holds that federal courts should directly or *indirectly* supervise or control the action of State courts on evidentiary problems while cases are pending in the State courts. There are other traditional remedies to protect federal constitutional rights.

Respondent federal narcotics agents may have acted in violation of the Fourth Amendment and of the due process clause of the Fourteenth. They did not do so under color of federal judicial authority. The admission of the allegedly illegally seized narcotics has not been sought in a federal court. The contraband evidence is not under the jurisdiction of a federal court.[4]

■ Notwithstanding the reference in Rule 41(e) (1) to property "illegally seized without warrant," the activities of respondents are not within the scope of the federal criminal rules which govern procedure *"in the courts of the United States and before United States commissioners * * *."* (Emphasis added.) Rule 1, Federal Rules of Criminal Procedure. Whatever remedies petition-er may have for the allegedly illegal conduct of the agents, these do not include the relief prayed for. There is no statutory or decisional authority directing the restraint by the federal courts of the officer's proposed testimony in a State criminal action, or the impounding of the narcotic drugs, where the criticized activities of these officers were not and have never been brought within the effective sphere of federal judicial supervision.

Considerations of policy would constrain the denial of a discretionary exercise of judicial supervision in this case were such power vested in the federal courts. By enactment of the Narcotic Control Act of 1956, Congress has shown its growing concern with the problem of use and traffic in narcotic drugs. As part of this legislation, Congress has charged the Secretary of the Treasury to join with the States in the suppression of the abuse of narcotic drugs by cooperating "in the institution and prosecution of cases in the courts of the United States and before * * * courts of the several States, * * *." Title 21 U.S.C.A. § 198. Congress has further conferred statutory authority on federal narcotic agents, members of the executive branch of the government and not of the judiciary to execute warrants, and recognized the right of these officers to make arrests without warrant under certain circumstances. Title 26 U.S.C.A. (I.R.C. 1954) § 7607. Further legislative considerations giving rise to the passing of these statutes are set forth in the margin.[5]

4. The statute providing for impounding of evidence seized under any revenue law of the United States, Title 28 U.S.C.A. § 2463, Property taken under revenue law not repleviable, does not independently create jurisdiction. Its operation depends on possession or control over the contraband by an officer of the court.

5. Narcotic Control Act of 1956, House Report No. 2388, U.S.Code, Cong. and Adm. News, 1956, p. 3274, at p. 3283:
  "Because narcotic drugs and marihuana are small in volume and high in price, the enforcement program with respect to the elimination of the illicit traffic has required constant vigilance on the part of the responsible Federal agencies. It is the view of your committee that these Federal agencies are to be commended for the outstanding work they have done in this field. Because present law has proved inadequate and in some cases has placed serious obstacles in the path of enforcement officers your committee is recommending appropriate changes in the applicable statutes.
  "For example, recent court decisions have tended, under certain circumstances, to furnish the criminal with a cloak of

In the light of the expressed legislative concern for the gravity of the narcotics problem, the greater power conferred on federal narcotics agents, and the desire for closer federal and State relations within this context, interference by federal judicial intervention in a State criminal proceeding is not warranted. Intervention at this posture of the State case, in effect, would result in granting a federal review of an interlocutory State court order. The imminence of a trial on a narcotics charge is not such irreparable injury as demands injunctive relief under principles of judicial supervision. Cf. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

In view of this decision it becomes unnecessary to pass on the question of a jurisdictional defect arising from the allegedly improper service of process, i. e. the failure to serve the United States.

For the reasons stated herein, the order of the district court dismissing the amended petition is hereby

Affirmed.

immunity to the detriment of society as a whole. These decisions have forced changes in recognized investigative procedures which have been sanctioned by the courts for many years. The narcotic traffickers, who are in most cases well organized professional racketeers, take full advantage of any limitations placed on enforcement officers. In some instances enforcement officers have been restricted in their right to arrest without a warrant, and to search and seize contraband before and after a valid arrest. The use of evidence of admissions and of confessions following an arrest has been curtailed. The enforcement officers have been required to secure an arrest warrant or a search warrant, even though circumstances indicate the impracticability of such a procedure. The delay involved in obtaining a warrant permits the destruction or removal of the narcotic evidence and allows the narcotic traffickers to escape prosecution for their crime. These and other restrictions on enforcement officers leave the public unprotected and give narcotic violators, especially the more reprehensible, larger racketeers and wholesalers, an advantage over law-enforcement officers in their efforts to combat the illicit narcotic traffic.

"Accordingly, your committee urges that the corrective measures provided in H.R. 11619 be enacted immediately to permit enforcement officers to operate more effectively. To this end H.R. 11619 would provide for (1) authorization for more effective searches and seizures in narcotic cases; (2) authority for Federal agents to carry firearms, to execute and serve warrants, and to make arrests without warrants for narcotic violations under certain circumstances; (3) a statutory method to grant immunity to witnesses in cases involving a violation of the narcotic or marihuana laws; (4) the United States to have the right of appeal from certain court orders granting a defendant a motion to suppress evidence or to return seized property; and (5) the strengthening of the applicable venue provisions so that venue in marihuana cases would lie within the jurisdiction in which a trafficker was apprehended as well as in the jurisdiction of acquisition."