## WILSON *v.* SCHNETTLER ET AL.

No. 182.   Argued December 15, 1960.—Decided February 27, 1961.

*James J. Doherty* argued the cause for petitioner.   With him on the brief was *Gerald W. Getty.*

*Daniel M. Friedman* argued the cause for respondents. On the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey, Beatrice Rosenberg* and *Kirby W. Patterson.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Respondents, who are federal narcotics agents, arrested petitioner without a warrant in Cook County, Illinois, and, in the course of an incidental search, found narcotic drugs on his person which they seized. Respondents then delivered petitioner to the Cook County authorities who confined him in the county jail. In due course, the county grand jury returned an indictment charging petitioner with possessing the narcotics in violation of an Illinois statute. Soon after his arraignment and plea of "not guilty," petitioner moved the court for an order suppressing the use of the narcotics as evidence in his impending criminal trial. After a full hearing, including the taking of evidence (not contained in this record), the court denied the motion.

Before the case was reached for trial, petitioner brought the present action against respondents in the Federal District Court in Chicago to impound the narcotics (though he did not allege that respondents have possession of them) and to enjoin their use, and the respondents from testifying, at the trial of the criminal case in the state court. The very meager complaint alleged, in addition to the facts we have stated, only a few of the facts relating to petitioner's arrest,[1] and that he believes "respondents

---

[1] In this respect, the complaint alleged only that at the hearing on the motion to suppress "the following facts and circumstances were developed:

"(a) The respondents testified that they had a certain building under surveillance where they had information that narcotic drugs were being sold.    [*Footnote 1 continued on p. 383.*]

will be called to testify in [the state criminal] case that the petitioner unlawfully had in his possession the narcotic drugs seized by the respondents . . . ." It concluded with a prayer for the relief stated.

Respondents moved to dismiss the complaint for failure to state a claim upon which relief could be granted. After a hearing, the District Court granted the motion and dismissed the action. On appeal, the Seventh Circuit affirmed. 275 F. 2d 932. To consider petitioner's claim that the judgment is repugnant to controlling rules and decisions of this Court, we granted certiorari. 363 U. S. 840.

We have concluded that the action was properly dismissed and that the judgment must be affirmed.

Although the complaint alleged that the arrest was made without a warrant, there was no allegation that it was made without probable cause. In the absence of such an allegation the courts below could not, nor can we, assume that respondents arrested petitioner without probable cause to believe that he had committed or was committing a narcotics offense. And if they had such probable cause, the arrest, though without a warrant, was lawful and the subsequent search of petitioner's person and the seizure of the found narcotics were validly made incidentally to a lawful arrest. *Weeks* v. *United States,* 232 U. S. 383, 392; *Carroll* v. *United States,* 267 U. S. 132, 158; *Agnello* v. *United States,* 269 U. S. 20, 30; *Giordenello* v. *United States,* 357 U. S. 480, 483; *Draper* v.

"(b) That the respondents saw your petitioner approach the said building and enter the same; that a short time later they observed your petitioner leave the building whereupon they arrested him.

"(c) That they could not state under oath whether he had the narcotic drugs in his possession before he entered the building under surveillance or not; that when they arrested him, they did not have a warrant for his arrest."

*United States,* 358 U. S. 307, 310–311.[2]   For this reason alone the complaint failed to state a claim upon which relief could be granted.

Nor did the complaint allege, even in conclusional terms, that petitioner does not have a plain and adequate remedy at law in the state court to redress any possible illegality in the arrest and incidental search and seizure. Indeed, the allegations of the complaint affirmatively show that petitioner does have such a remedy in the Illinois court and that he has actually prosecuted it there, but only to the point of an adverse interlocutory order.   That court, whose jurisdiction first attached, retains jurisdiction over this matter to the exclusion of all other courts—certainly to the exclusion of the Federal District Court—until its duty has been fully performed, *Harkrader* v. *Wadley,* 172 U. S. 148, 164;[3] *Peck* v. *Jenness,* 7 How. 612, 624–625,[4] and

---

[2] Article II, § 6, of the Illinois Constitution protects against unreasonable searches and seizures in substantially the same language as the Fourth Amendment.   That State's interpretation of its constitutional provision and its exclusionary rule, similar to the one followed in the federal courts, makes the Illinois law accord with the principles established by this Court for the federal system.   See, *e. g., People* v. *La Bostrie,* 14 Ill. 2d 617, 620–623, 153 N. E. 2d 570, 572–574; *People* v. *Tillman,* 1 Ill. 2d 525, 529–530, 116 N. E. 2d 344, 346–347.

[3] "When a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed and the jurisdiction involved is exhausted; and this rule applies alike in both civil and criminal cases." *Harkrader* v. *Wadley, supra,* at 164.

[4] "It is a doctrine of law too long established to require a citation of authorities, that . . . where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.   These rules have their foundation, not merely in comity, but on necessity.   For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other." *Peck* v. *Jenness, supra,* at 624–625.

it can determine this matter as well as, if not better than, the federal court. If, at the criminal trial, the Illinois court adheres to its interlocutory order on the suppression issue to petitioner's prejudice, he has an appeal to the Supreme Court of that State, and a right if need be to petition for "review by this Court of any federal questions involved." *Douglas* v. *City of Jeannette,* 319 U. S. 157, 163. It is therefore clear that petitioner has a plain and adequate remedy at law in the criminal case pending against him in the Illinois court.

There is still another cardinal reason why it was proper for the District Court to dismiss the complaint. We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial." *Ponzi* v. *Fessenden,* 258 U. S. 254, 260. Another is that federal courts should not exercise their discretionary power "to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent . . . ." *Douglas* v. *City of Jeannette, supra,* at 163.

By this action, petitioner not only seeks to interfere with and embarrass the state court in his criminal case, but he also seeks completely to thwart its judgment by relitigating in a trial *de novo* in a federal court the very issue that he has already litigated in the state court. "If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disrup-

tion. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court [and, we may add, in the ruling of motions to suppress evidence, and in ruling the competency of witnesses and their testimony]—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." *Stefanelli* v. *Minard,* 342 U. S. 117, 123–124.

Notwithstanding all of this, petitioner contends that the averments of his complaint were sufficient to entitle him to the relief prayed under the principles announced in *Rea* v. *United States,* 350 U. S. 214. But it is plain that the averments of this complaint do not invoke or even approach the principles of the *Rea* case. That case did not hold, as petitioner's contention assumes, that narcotic drugs lawfully seized by federal officers are inadmissible, or that such officers may not testify about their seizure, in state prosecutions. Such a concept would run counter to the express command of Congress that federal officers shall cooperate with the States in such investigations and prosecutions. See 21 U. S. C. § 198 (a). Indeed, the situation here is just the reverse of the situation in *Rea.* There, the accused had been indicted *in a federal court* for the unlawful acquisition of marihuana, and had moved in that court, under Rule 41 (e) of the Federal Rules of Criminal Procedure (18 U. S. C. App. Rule 41 (e)), for an order suppressing the use of the marihuana as evidence

at the trial. After hearing, the District Court, finding that the accused's arrest and search had been made by federal officers under an illegal warrant issued by a United States Commissioner, granted the motion to suppress. The effect of that order, under the express provisions of that Rule, was that the suppressed property "shall not be admissible in evidence at any hearing or trial." Cf. *Reina* v. *United States,* 364 U. S. 507, 510–511. Despite that order, one of the arresting federal officers thereafter caused the accused to be rearrested and charged, in a state court, with possession of the same marihuana in violation of the State's statute, and threatened to make the State's case by his testimony and the use of the marihuana that the federal court had earlier suppressed under Rule 41 (e). Thereupon, to prevent the thwarting of the federal suppression order, petitioner moved the federal court to enjoin that conduct. That court denied the motion and its judgment was affirmed on appeal. On certiorari, this Court, acting under its supervisory power over the federal rules, which "extends to policing [their] requirements and making certain that they are observed," 350 U. S., at 217, reversed the judgment, because "A federal agent [had] violated [and was about further to violate] the federal Rules governing searches and seizures—Rules prescribed by this Court and made effective after submission to the Congress. See 327 U. S. 821 *et seq.*" 350 U. S., at 217.

How different are the facts in the present case! Here there is no allegation or showing that any proceedings ever were taken against petitioner under any federal rule or in any federal court. There has been no finding that petitioner's arrest was unlawful or that the search of his person which yielded the narcotics was not incident to a lawful arrest and therefore proper. The state court's finding—the only court involved and the only finding on the matter—is the other way. Nor is there even any

388

allegation in the complaint that the arrest was not made upon probable cause, although it is admitted that the search was made incident to the arrest.

It is clear that the complaint was properly dismissed.

*Affirmed.*

MR. JUSTICE STEWART, concurring.

I could not base affirmance of the judgment upon the ground that the petitioner's motion was technically deficient in failing to recite the talismanic phrase "without probable cause." Nor do I think the District Court lacked power to issue the requested injunction, either by reason of 28 U. S. C. § 2283 or the rule formulated in *Harkrader* v. *Wadley,* 172 U. S. 148, 164. It seems to me that *Rea* v. *United States,* 350 U. S. 214, established that District Courts do have such power.*

But I join in affirming the judgment. The petitioner has failed to state a case warranting equitable relief under the standards of *Stefanelli* v. *Minard,* 342 U. S. 117, 122, and *Douglas* v. *City of Jeannette,* 319 U. S. 157, 163. As the Court's opinion points out, the factors which justified the issuance of an injunction in *Rea* are not present here.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BRENNAN concur, dissenting.

The trial judge on respondents' motion [1] dismissed an "amended petition for declaratory judgment" that made the following allegations: Petitioner was arrested by two of the respondents, agents of the Federal Bureau of Narcotics, who acted without a warrant. He was searched by

---

*The dissenters in *Rea* agreed that this power exists. See 350 U. S., at 219.

[1] The motion to dismiss specified three grounds. Of them, only two are before this Court, *i. e.,* failure to state a cause of action and lack of jurisdiction over the subject matter.

these agents at the time of his arrest and narcotics were seized from him. Though imprisoned, he was neither taken before a Federal Commissioner nor charged with a crime against the United States. Instead, he was indicted for the possession of those same narcotics under the laws of Illinois. He unsuccessfully attempted to exclude the use of these narcotics as evidence or the testimony of the arresting agents by a motion made in the state court where "the law of the forum was applied and the Federal rules of Criminal Procedure were not applied." Petitioner based jurisdiction of the federal court on "the supervisory powers of Federal Courts over federal law enforcement agencies." Alleging that "the respondents will be called to testify in such case that the petitioner unlawfully had in his possession the narcotic drugs seized by the respondents," he asked, first, a declaratory judgment as to whether the federal agents had acted illegally in the arrest and incidental search of petitioner and, second, in the event that the search had been illegal, the impounding of the seized narcotics and an injunction against the respondents' testifying "in respect to the narcotic drugs so seized" in the state proceedings.

These allegations, liberally construed, entitle petitioner to a hearing, and, if they are supported by evidence, to the relief he seeks. In *Rea* v. *United States,* 350 U. S. 214, we held that an injunction would issue to prevent the use by federal agents in a state proceeding of the fruits of an illegal search. "The obligation of the federal agent is to obey the Rules [of Criminal Procedure]. They are drawn for innocent and guilty alike. They prescribe standards for law enforcement. They are designed to protect the privacy of the citizen, unless the strict standards set for searches and seizures are satisfied. That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state proceedings." *Id.,* 217–218.

Under Rule 41 (e), Federal Rules of Criminal Procedure, the federal court is instructed to hear and determine a motion to suppress made by "A person aggrieved by an unlawful search and seizure [where] the property was illegally seized without warrant." [2]   Implicit in that duty is the judicial enforcement of the provisions of the Fourth Amendment and Acts of Congress which limit the power of arrest and search.   Judicial enforcement is no less to be invoked *after* the federal agents have acted than it is *before* they have acted, *i. e.,* when they apply to the courts for a warrant.   That, as I understand, is the teaching of the *Rea* case.

It is said that petitioner has failed to allege that the arrest in question was made without probable cause, and thus illegal under federal law.   See 26 U. S. C. § 7607 (2). It is said that he has failed to point out in what way his "legal remedy" (*i. e.,* the hearing on the motion to exclude in the state court) was inadequate.   It is said that a federal court, in the exercise of discretion to grant or to deny declaratory relief, should refuse to act in these circum-

---

[2] Rule 41 (e) reads: "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed.   The judge shall receive evidence on any issue of fact necessary to the decision of the motion.   If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial.   The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

stances, especially since the grant of it would interfere with a state prosecution. I believe that none of these objections is well taken.

If it should appear at a hearing that the arrest and incidental search were legal under federal law, then petitioner would have no case. But surely his failure to make the magic allegation that the arrest was "without probable cause" should not cause him to be summarily cut off.[3] At most, the defect complained of would justify his being required to amend his pleading.

Petitioner's failure to allege the inadequacy of his "legal remedy" may be as easily disposed of. He is invoking, in this proceeding, the "supervisory powers" of the federal courts over the administration of federal law enforcement. That power is lodged in the federal courts. Congress could have entrusted the enforcement of all federal laws to state tribunals, as has India. But the First Congress made the decision to create a federal judicial system, complete unto itself. Some federal laws are enforceable in state tribunals. See, *e. g., Testa* v. *Katt,* 330 U. S. 386. But the Federal Rules of Criminal Procedure are not among them. Since the federal agents have chosen to avoid the federal courts, the issue as to compliance with the Federal Rules cannot be litigated in any way other than by this proceeding. In the state trial the issue will not be whether the federal agents have acted within the limits of their federal authority, but whether, under the state constitution, the search was a reasonable one.[4]

---

[3] The Court of Appeals did not proceed on any such narrow grounds. It speaks of the "allegedly illegal arrest and search," and places its decision on the "[d]ecisive factual differences [which] distinguish the Rea case from the instant proceeding." 275 F. 2d 932, 933.

[4] Since petitioner has alleged that the Illinois court did not apply the standards imposed by the federal courts, we may leave aside questions which might be raised by the state court incorporation of

Under the Supremacy Clause state law must give way where, for example, a state procedure violates the Federal Constitution. Yet under the decision of this Court in *Wolf* v. *Colorado,* 338 U. S. 25, not even the duty of excluding evidence, because it was seized in violation of the command of the Fourth Amendment, is imposed on state courts as a requirement of federal law. The proper forum—indeed the only one available for litigation of compliance with that requirement—is the federal court.

We should also overrule the objection [5] based on the policy of 28 U. S. C. § 2283 which restrains a federal court from intermeddling with state proceedings, especially state criminal proceedings. Section 2283 [6] prohibits, in certain circumstances, the grant by a federal court of "an injunction to stay proceedings in a State court." What

---

a federal standard to guide their determinations under state law. Cf. *Standard Oil Co. of Calif.* v. *Johnson,* 316 U. S. 481; *People* v. *Grod,* 385 Ill. 584, 586, 53 N. E. 2d 591, 593 (the state and federal constitutional provisions are said to be "in effect the same").

[5] Respondents stress the fact that petitioner's prayer asks for a "declaratory judgment" and quote language from decisions of this Court that speak of a judicial discretion to deny such relief. See, *e. g., Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 240–241; *Brillhart* v. *Excess Ins. Co.,* 316 U. S. 491, 494–495; *Public Service Comm'n* v. *Wycoff Co.,* 344 U. S. 237, 241–245. Such cases are not applicable. The judicial discretion to deny declaratory relief is in the penumbra of the constitutional requirement of "case or controversy." There is no such issue here. Discretion, if it exists at all, must stem from the general equity notions based on the availability of other remedies. Indeed, petitioner's request for declaratory relief is no more than an inartistic demand that the federal judge entertain the motion and "receive evidence on any issue of fact necessary to the decision of the motion." Rule 41 (e). That it is denominated a request for declaratory judgment is mere surplusage.

[6] See, *e. g., Harkrader* v. *Wadley,* 172 U. S. 148; *Ex parte Young,* 209 U. S. 123.

we said about the relief sought in *Rea* v. *United States, supra,* is applicable here:

"The District Court is not asked to enjoin state officials nor in any way to interfere with state agencies in enforcement of state law. . . . No injunction is sought against a state official. The only remedy asked is against a federal agent who, we are told, plans to use his illegal search and seizure as the basis of testimony in the state court." *Id.,* 216–217.

In this case, as in *Rea,* the interference, if any, is an indirect one and only incidental to placing federal officers under federal standards of behavior. If the considerations which led to decisions like *Stefanelli* v. *Minard,* 342 U. S. 117, were not controlling in *Rea* v. *United States, supra,* they should not be controlling in this case.

The rationale of *Rea* v. *United States, supra,* was that the federal courts had a specific duty of supervising compliance of federal law enforcement officers with the Federal Rules of Criminal Procedure. "A federal agent has violated the federal Rules governing searches and seizures—Rules prescribed by this Court and made effective after submission to the Congress. See 327 U. S. 821 *et seq.* The power of the federal courts extends to policing those requirements and making certain that they are observed." *Id.,* 217. The *Rea* case is now distinguished because in that case other contacts with the federal courts existed beyond the bare fact that federal officers were the actors in the illegal search. The additional contacts in the *Rea* case were three: (1) The search was made under a purported warrant of the federal courts. (2) An indictment based on the acquisition of the seized narcotics was filed in the federal court, although subsequently dismissed. (3) A motion to suppress was made in the federal court, while the indictment was pending, and was granted.

Those factual differences should not lead to a different result in this case. The decisive factor, indeed the only relevant one in this case, as in *Rea,* is that federal law enforcement officers are the actors in an illegal search and seizure.

If the officers in *Rea* had acted without any warrant, the result would not have been different. The victim of the search could certainly have obtained an order of suppression against the use of the evidence in the federal courts. Rule 41 (e) specifically so provides. The motion to suppress might have been made before an indictment was filed. Again, the victim would be entitled to an order regarding the use of the evidence in federal courts. See *Go-Bart Co.* v. *United States,* 282 U. S. 344, 358. The federal agents would not be "flouting" the Rules any the less if, in either of these two situations, they had, after the issue of the order under Rule 41 (e), prepared to use the suppressed evidence in a state court.

To be sure, no federal indictment was ever filed in this case; and the state proceeding was commenced prior to the issue of any order by a federal court on the legality of the search and seizure made by the federal law officers. That fact affords no reason why the victim of lawless federal police may not apply to a federal court for relief. When the Court relies on this circumstance it repudiates the very basis of the *Rea* decision, *viz.:* that the substantive command of the Federal Rules of Criminal Procedure has been "flouted" by federal officers.

Under the Fourth Amendment, the judiciary has a special duty of protecting the right of the people to be let alone, except as warrants issue on a showing of probable cause. This special relation of federal courts to the control of federal officials who lawlessly invade the privacy of individual citizens reaches far back into history. It had, at first, an ominous note, as the courts themselves were

the instrument of oppression. It was before a colonial court that James Otis, Jr., made his plea against the infamous "writs of assistance." [7] Since then the courts have played an honorable role in the protection of privacy. Warrants, which were at the start only a form of judicial protection extended to officials, have become the means for protecting the individual. A judicial officer has been interposed between the suspicious official and the citizen.[8] The role of the courts has been active. In *Weeks* v. *United States,* 232 U. S. 383, 391–392, this Court said:

"The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws."

That case forged the doctrine, now firmly entrenched, that the federal courts will not admit illegally seized property as evidence.[9] It is this doctrine which was the core

[7] See *Boyd* v. *United States,* 116 U. S. 616, 624–625; *Harris* v. *United States,* 331 U. S. 145, 155, 157–159 (dissenting opinion); *Frank* v. *Maryland,* 359 U. S. 360, 374, 376–381 (dissenting opinion).

[8] This same evolution whereby the judiciary became the protectors of privacy took place in England. "[F]or these warrants are judicial acts, and must be granted upon examination of the fact." 2 Hale, History of the Pleas of the Crown (1st Am. ed. 1847), 150.

[9] See, *e. g., Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385; *Gouled* v. *United States,* 255 U. S. 298; *Go-Bart Co.* v. *United States,* 282 U. S. 344; *Taylor* v. *United States,* 286 U. S. 1; *Harris* v. *United States,* 331 U. S. 145; *Johnson* v. *United States,* 333 U. S. 10;

of the substantive command whose procedural outlines are reflected in Rule 41 (e). It is this doctrine that we unsympathetically reject today.

Our cases reflect the belief that federal judges have a distinct mission to perform in actively protecting the right of privacy of the individual. We said in *Johnson* v. *United States,* 333 U. S. 10, 14:

> "Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers."

This particular view reflected the deep-lying assumption that the command of the Fourth Amendment implies continuous supervision by the judiciary over law enforcement officers, quite different from the passive role which courts play in some spheres. The rule that a search, otherwise legal, may be illegal for failure to apply to a magistrate for a warrant was expressed in *Trupiano* v. *United States,* 334 U. S. 699, and *McDonald* v. *United States,* 335 U. S. 451. We stated that "search warrants are to be obtained and used wherever reasonably practicable." *Trupiano* v. *United States, supra,* 709. We have occasionally retreated, as *United States* v. *Rabinowitz,* 339 U. S. 56; *Frank* v. *Maryland,* 359 U. S. 360; and *Abel* v. *United States,* 362 U. S. 217, show. But we returned to the basic philosophy of the Fourth Amendment in *Rea* v. *United States, supra.* When I wrote for the Court in that case saying that "[t]he obligation of

*Brinegar* v. *United States,* 338 U. S. 160; *Miller* v. *United States,* 357 U. S. 301; *Draper* v. *United States,* 358 U. S. 307; *Henry* v. *United States,* 361 U. S. 98; *Elkins* v. *United States,* 364 U. S. 206; *Rios* v. *United States,* 364 U. S. 253.

the federal agent is to obey the Rules," I thought we meant obedience to the substantive law for which those rules offer a procedural matrix.[10] At 217. It is difficult for me to believe that that protection is limited to those situations where the federal officers invoke the "process" of the federal court. Rule 41 (e) provides a remedy by way of suppression where "the property was illegally seized without warrant," as it was in this case, if the allegations are supported by evidence.

When we forsake *Rea* v. *United States* and tell the federal courts to keep hands off, we wink at a new form of official lawlessness. Federal officials are now free to violate the Federal Rules that were designed to protect the individual's privacy, provided they turn the evidence unlawfully obtained over to the States for prosecution. This is an evasion of federal law that has consequences so serious that I must dissent. This case may be inconsequential in the tides of legal history. But the rule we fashion is an open invitation to federal officials to "flout" federal law, to make such searches as they desire, to forget about the search warrants required by the Fourth Amendment, to break into homes willy-nilly, and then to repair to state courts. There the Federal Rules do not apply; there the exclusionary rule of *Weeks* v. *United States, supra,* does not apply. See *Wolf* v. *Colorado, supra.* There evidence, unlawfully obtained by the standards that govern federal officials, may be used against the victim. A few States have exclusionary rules as strict as

---

[10] It is said that the present proceeding is not one under Rule 41 (e), since there are no federal "proceedings" within the meaning of the enabling statute. 18 U. S. C. § 3771. But the policy remains the same, and the analogy of an independent suit based on the same rights is clear. Nor can it be said that 21 U. S. C. § 198 (a) creates any exemption for federal officers from the standards otherwise imposed on them. Cooperate they may, but they may not break the law to do so.

those commanded by the Fourth Amendment.[11]  Many permit the use in state prosecutions of evidence which would be barred if tendered in federal prosecutions.[12]  The tender regard which is expressed for federal-state relations will in ultimate effect be a tender regard for federal officials who flout federal law.  Today we lower federal law enforcement standards by giving federal agents *carte blanche* to break down doors, ransack homes, search and seize to their heart's content—so long as they stay away from federal courts and do not try to use the evidence there.  This is an invitation to lawlessness which I cannot join.

---

[11] See, *e. g.*, Texas Code of Crim. Proc., Art. 727a, as amended by Acts 1953, 53d Leg., p. 669, c. 253, § 1; *People* v. *Cahan,* 44 Cal. 2d 434, 282 P. 2d 905.

[12] See, *e. g., People* v. *Gonzales,* 356 Mich. 247, 97 N. W. 2d 16.