William T. CATERINA, Plaintiff,

v.

Gerald J. MILLER and Nicholas Navarro, Defendants.

Civ. No. 66–734.

United States District Court
S. D. Florida.

Sept. 23, 1966.

Paul E. Gifford, of Dubbin, Schiff, Berkman & Dubbin, Miami, Fla., for plaintiff.

William A. Meadows, U. S. Atty., Miami, Fla., for defendants.

## SUMMARY FINAL JUDGMENT

CABOT, District Judge.

This is a suit to enjoin two Federal officers from testifying in State criminal proceedings against this plaintiff. The complaint alleges that defendants, while working in conjunction with State officers, deprived plaintiff of his Federal Constitutional rights by an unlawful arrest with a subsequent unlawful search and seizure. Criminal proceedings have been instituted against plaintiff in the State courts by the State agents, however no Federal criminal proceedings have been initiated. Jurisdiction is based upon the supervisory power of the Federal courts to enforce the Federal rules for the official conduct of Federal agents.

This case came before the Court upon plaintiff's petition for temporary injunction and upon defendants' motion to dismiss. The Court having considered the pleadings and briefs, taken testimony in open court, and considered the oral argument of counsel, disposes of the case pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, under which a motion to dismiss may be treated as a motion for summary judgment after hearing testimony and argument.

### I.

The facts are that defendants, Federal narcotics agents, in concert with State police agents, searched an apartment for narcotics. A search warrant had been obtained by the State agents. While defendants were in the process of searching the apartment, plaintiff and his brother entered the apartment through the partially opened door and asked what was going on. Defendants identified themselves, stated their purpose, and asked plaintiff to identify himself. Plaintiff stated that he had left his identification in the car outside, and plaintiff, at defendants' request, accompanied defendants to the car. Plaintiff entered the automobile and proceeded to search through the console for his identification, while defendants observed from outside the automobile. Defendant Navarro saw a clear plastic box containing a green leafy substance in the open console and asked plaintiff what it was. Plaintiff picked up the box and stated that it was "pot" (vernacular for marijuana). Defendant then placed plaintiff under arrest and immediately advised him that he had the right to remain silent and that he had the right to counsel. Plaintiff then stated that he would hire his own counsel, so defendant did not advise plaintiff that the Court would appoint counsel if he could not afford one.

Subsequently, the State agents brought charges against plaintiff which are now pending in the Criminal Court of Record in and for Dade County, Florida. It is stipulated by both counsel that a motion to suppress seeking to suppress the same evidence, and based on the same grounds as raised in this Court, has been made in the State Court, but has not yet been ruled upon.

### II.

■ This Court has jurisdiction and authority to regulate the official conduct of Federal agents under the supervisory power should the necessity arise, regardless of supplemental State action. See Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1955); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Lucas v. Mayo, 222 F.Supp. 513 (S.D.Tex.1963).

■ The facts of this case, however, dictate that the Court consider the propriety of such action; to enjoin these officers at this time would be an intervention with State processes before the State has had due opportunity to act. It is the view of this Court that such intervention should be taken only after careful consideration of the relationship between State and Federal jurisdictions and the timeliness of such intervention.

### III.

Plaintiff's main substantive contention is that defendants violated his Constitutional rights by not warning him of his right to remain silent and his right to counsel, as soon as they took custody of

him. Plaintiff claims custody initiated as soon as they started to go to the car, citing Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, as authority. Plaintiff further contends that because Federal rights are alleged to have been violated by Federal agents, this Court should intervene and discipline at once. The Court does not rule upon the merits since the case is to be otherwise disposed of.

The landmark case in this area is Rea v. United States, supra. Rea was indicted in Federal Court on a narcotics charge. Upon proper motion the evidence obtained by Federal agents was suppressed, and subsequently the indictment was dismissed. Thereafter the same Federal agents brought charges in the State Court attempting to use the same evidence. Rea then sued in Federal Court to enjoin the Federal agents from testifying or giving evidence in the State Court. The Supreme Court held that the injunction was proper.

The factual difference in *Rea* and in this case is that in *Rea,* the Federal District Court had already made a determination that the evidence was illegally obtained, and an order had been entered to suppress it. Only later was the State charge made. Had the case gone to trial and a motion to suppress been made, the State judge would have been required to reexamine the evidence upon which the Federal Court had ruled. In the case at bar the State had original jurisdiction, no Federal charges have been filed, and no Federal order has been entered.

In Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961), an action was brought in Federal District Court to enjoin Federal agents from testifying in a State criminal proceeding. An arrest was made without a warrant. The civil complaint seeking injunction was dismissed, inter alia, because it failed to allege that the arrest was made without probable cause. The Supreme Court distinguished Rea v. United States, supra, where the Federal Court had original jurisdiction, because in *Wilson* the State Court had already denied a motion

to suppress, ruling admissible the same evidence.

The *Wilson* Court went on to say at page 384 of 365 U.S., at page 634 of 81 S.Ct.:

"Nor did the complaint allege, even in conclusional terms, that petitioner does not have a plain and adequate remedy at law in the state court to redress any possible illegality in the arrest and incidental search and seizure. Indeed, the allegations of the complaint affirmatively show that petitioner does have such a remedy in the Illinois court and that he has actually prosecuted it there, * * *. That court * * * can determine this matter as well as, if not better than, the federal court. If, at the criminal trial, the Illinois court adheres to its * * * order on the suppression issue to petitioner's prejudice, he has an appeal to the Supreme Court of that State, and a right if need be to petition for 'review by this Court of any Federal questions involved.' Douglas v. City of Jeannette, Pa., 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324. It is therefore clear that petitioner has a plain and adequate remedy at law in the criminal case pending against him in the Illinois court.

"There is still another cardinal reason why it was proper for the District Court to dismiss the complaint. We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused 'should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial.' Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S. Ct. 309, 310, 66 L.Ed. 607. Another is that federal courts should not exercise

their discretionary power 'to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent * * *' Douglas v. City of Jeannette, supra, 319 U.S. at page 163, 63 S.Ct. at page 877.

Cleary v. Bolger, 371 U.S. 392, 83 S. Ct. 385, 9 L.Ed.2d 390 (1962), was argued to this Court but its holding is inapplicable to the issue at bar. In *Cleary*, an injunction was sought against a *State officer* to prohibit his testimony in State criminal proceedings for an alleged violation of Federal rules. Affirming the denial of the injunction, the Supreme Court said that *Rea* did not support an injunction against a *State* official. Thus, *Cleary* does not decide the issue at bar.

Plaintiff cites Lucas v. Mayo, supra, as supporting his position. That was a suit to enjoin Federal narcotics agents from testifying in a pending State prosecution, because of an alleged unconstitutional search and seizure by the Federal agents. That case is almost "on all fours" with the case at bar with one important factual distinction. In *Lucas* at page 515 of 222 F.Supp., the Court states that all counsel stipulated that Texas criminal procedure did not provide for motions to suppress the evidence before trial. It is assumed that none was filed. This Court would question the *Lucas* holding unless its application is limited to those instances in which no State relief is available to the petitioner.

■ In this case, however, as previously stated, a motion to suppress this same testimony has been filed in the State Court, but as yet is undecided. It is therefore the holding of this Court that this action is premature. Under these facts, no Federal action should be taken until the State has had full and ample opportunity to rule on the issue. Since the State Court had original jurisdiction, and since the means are readily

available there to correct any injustice, and since no immediate irreparable injury was shown, it would be a threat to our system of independent sovereignties for this Court to impose its judgment before the State Court has opportunity to rule on the question. It is conceivable that a situation might arise in which the Federal Courts should intervene; however, the testimony taken here revealed no such dire circumstances.

■ In analogizing this action to a petition for habeas corpus by a State prisoner to a single Federal District Judge, marked similarities are apparent in the basic substance and form of each remedy. In both actions a Federal District Judge is asked to substitute his judgment for that of the State judiciary; and this is sometimes necessary to prevent a deprivation of Constitutional rights. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). However, before a petition for habeas corpus can be made, the petitioner must first exhaust his State remedies. 28 U.S.C. § 2254. This is held to mean not only that the petitioner shall seek State relief first, but that he must seek review to the highest State Court.

■ This statute represents a Congressional policy determination which implements the Federal-State sovereignty distinction and seeks to preserve the autonomy and dignity of each. While it does not apply per se to a Federal injunctive intervention in State criminal proceedings, it would seem reasonable that this policy should apply to such State-Federal judicial relations in the absence of a specific statute or a showing of some overriding immediate need for Federal intervention.

It is therefore ordered and adjudged that:

1. The petition for temporary restraining order is denied.

2. The motion to dismiss is treated as a motion for summary judgment.

3. Summary final judgment is entered for defendants, Gerald J. Miller

and Nicholas Navarro, and against the plaintiff, William T. Caterina, and the plaintiff shall take nothing by his complaint and the defendants shall go hence without day.