William TAYLOR, Plaintiff,

v.

CITY OF CHESAPEAKE, a municipal corporation, G. A. Treakle, Charles L. Richardson, Vernon G. Bailey, Jr., William P. Clarke, Sr., W. E. Hudgins, Jr., Hugo A. Owens, Vernon A. Tierney, Russell I. Townsend, Jr., L. Belmont Williams, City Councilmen, Roger I. Keay, Director of the Bureau of Inspections, I. D. Sutton, Building Inspector, of the City of Chesapeake, Virginia, Defendants.

Civ. A. No. 109-70-N.

United States District Court,
E. D. Virginia,
Norfolk Division.

April 2, 1970.

714

Stanley E. Sacks, Sacks, Sacks & Tavss, Norfolk, Va., for plaintiff.

William L. Forbes, City Atty. for the City of Chesapeake, Chesapeake, Va., for defendants.

## OPINION AND ORDER

KELLAM, District Judge.

In his complaint filed herein February 19, 1970, naming the City of Chesapeake, its nine members of City Council, the Director of the Bureau of Inspections and the Building Inspector as defendants, plaintiff seeks (a) an injunction prohibiting defendants, their servants, etc., from interfering with plaintiff's operation of his theatre, both temporarily and permanently, and (b) to determine that the Building Code of said City, as applied, is unconstitutional as to plaintiff.

Plaintiff alleges he arranged on or about January 1, 1970, with Grand Amusement Company, Incorporated, for the use of its premises for showing motion pictures and burlesque; and that plaintiff was enjoined by the Circuit Court of Chesapeake, Virginia, "from further operation because of alleged violations of the Building Code of the City of Chesapeake." He further alleges defendants combined in bad faith, to use "ostensible Building Code violations to stop plaintiff from operating his theatre;" that such is not a valid exercise of regulations or police power by the City; that such interferes with plaintiff's exercise of his right of free expression guaranteed by the Constitution; that the action of the City in seeking and obtaining the injunction, and in enacting an ordinance regulating theatres featuring live performances within 1000 feet of a school, was to prevent plaintiff from conducting his "burlesque" shows; that the Building Code as applied to him is unconstitutional, as is the ordinance.

Defendants answered, denying any plan to deprive plaintiff of his constitutional rights. Pursuant to notice, a hearing on application for a temporary restraining order was held February 27, 1970. Following presentation of some evidence, on motion, plaintiff's counsel was granted until March 6th to file a written brief, which was filed March 9th, and defendants were granted until March 13th to file a reply, which was filed March 18th.

Plaintiff planned and undertook to operate a theatre with live performances and movies. Application was made for a license to operate such activities. Inspection of the premises was made by the City Building Inspector. The premises are owned by Grand Amusement Company, Incorporated. Plaintiff asserts he has a lease and although called for, it has not been produced. The Building Inspector advised plaintiff that before he could carry on his business at said location he must obtain a certificate of occupancy, as provided in their Building Code. It is admitted no application has been made for such a certificate. The Inspector directed plaintiff not to open for business. In defiance of said order plaintiff did open. The Circuit Court of the City of Chesapeake, Virginia, issued a temporary injunction enjoining and restraining plaintiff and Grand Amusement Company, Incorporated, from violating the Building Code and the City Ordinance hereinabove mentioned. Taylor and Grand Amusement moved to dissolve the injunction. Following a hearing, the Court issued a permanent injunction enjoining Taylor and Grand Amusement from operating a theatre with live performers on the stage at the location in question "until and unless a certificate of occupancy is

obtained from the Chesapeake Bureau of Inspections pursuant to the Chesapeake Building Code Section 109.1." Section 109.1 of the City of Chesapeake Building Code provides:

No new building shall be occupied and no change in occupancy of a building or part of a building shall be made until after the Building Official shall have issued a certificate of occupancy therefor.

The word "occupancy" is defined by Section 201 of said Code:

OCCUPANCY—means the purpose for which a building is used or intended to be used. Change of occupancy is not intended to include change of tenants or proprietors.

The Building Inspector testified that plaintiff is not now in compliance with the City Building Code; and that he has not applied for or been granted a certificate of occupancy. Taylor testified he had not applied for such a certificate. While Taylor here contends there is no change in occupancy, the Circuit Court of the City of Chesapeake, in construing the ordinance of its City, has held that the occupancy of the building by Taylor is a change in occupancy. He admits he is not a principal or otherwise connected with Grand Amusement. If Taylor feels that such a construction is erroneous, then his course is by appeal to the Supreme Court of Appeals of Virginia, and then on to the United States Supreme Court. Rather than following this normal and orderly course, he seeks here to have this Court place a different construction on the ordinance. He also seeks to have this Court construe and rule unconstitutional the ordinance passed by the City Council of Chesapeake regulating theatres featuring live performances.

In brief, what plaintiff seeks is an order from this Court (a) dissolving the injunction of the Circuit Court of the City of Chesapeake, (b) reversing that Court's construction of the City Building Code, (c) permitting plaintiff to operate without the necessity of obtaining a certificate of occupancy, (d) declaring unconstitutional on its face the ordinance regulating and controlling theatres featuring live performances in Chesapeake, and (e) enjoining defendants and all their agents from interfering with plaintiff in the operation of his theatre.

The reasons for and the reasonableness of the actions of defendants are of utmost importance. The construction of the ordinance should be for the State Court. If the construction of the Code and ordinance by the Circuit Court of Chesapeake is not correct, the Supreme Court of Appeals of Virginia can correct it. If a federal question is involved, either of those courts can rule on it. Plaintiff "has not shown that the * * * procedure for review [by either of those courts] of orders is in any way inadequate to preserve for ultimate review in [the United States Supreme Court] any federal questions arising out of such order." Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002. Continuing in that case, the Court said: [341 U.S. 341, 349, 71 S.Ct. 762, 768]—

As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with the "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts," is convinced that the asserted federal right cannot be preserved except by granting the "extraordinary relief of an injunction in the federal courts." Considering that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee

may have are to be pursued through the state courts. Burford v. Sun Oil Co., 1943, 319 U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424]; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 1941, 311 U.S. 570, 577 [61 S.Ct. 343, 346, 85 L.Ed. 358]; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, [60 S.Ct. 1021, 84 L.Ed. 1368], as amended, 1940, 311 U.S. 614, 615 [61 S.Ct. 66, 85 L.Ed. 390].

In Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68, 1969, decided February 25, 1970, the Supreme Court reversed a three-judge District Court's ruling declaring certain fishing laws of Alaska and regulations under them unconstitutional. There it said:

This case is virtually on all fours with City of Meridian v. Southern Tel. & Tel. Co., 358 U.S. 639 [79 S.Ct. 455, 3 L.Ed.2d 562], where a single district judge in construing a Mississippi statute held that it violated both the Federal and the State Constitutions. The Court of Appeals affirmed and we vacated its judgment and remanded to the District Court with directions to hold the case while the parties repaired to a state tribunal "for an authoritative declaration of applicable state law." Id., at 640 [79 S.Ct. at 456].

We said:

"Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. * * * That is especially desirable where the questions of state law are enmeshed with the federal questions. * * * Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. * * * In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." Id., at 640–641 [79 S.Ct. at 456].

Continuing in the opinion, the Court said, "A state court decision here, however, could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship."

Plaintiff's concern over delay and its effect on him should not prompt the Court to undertake the determination of matters which should be first decided by the State Court. In the *Reetz* case, the Court referred to the District Court's "concern over the effect of further delay" but said it "concluded that the first judicial application of these constitutional provisions should properly be by an Alaska Court," and the federal court should have "stayed its hand while the parties repaired to the state courts." See also Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267.

■ A court should at all times exercise care and caution in issuing injunctions, particularly against another court, and more particularly against another sovereign. Congress had this in mind when in 1793 it provided that federal courts cannot, with certain limited exceptions, enjoin state proceedings. 28 U.S.C. § 2283. In an opinion in chambers in the case of Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 396 U.S. 1201, 90 S.Ct. 9 24 L.Ed.2d 23 (1969), Mr. Justice Black in denying enforcement of a Federal District Court injunction against a State Court proceeding, restated this principle. Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), stands for the proposition that 28 U.S.C. § 2283 applies even in actions under 42 U.S.C. § 1983.

What is here sought is federal interference with a state court's good-faith administration of its laws. This is "inconsistent with our 'federal framework'

and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182.

Plaintiff moved the State Court to dissolve the temporary injunction. He was granted a full hearing, and enjoined from his proposed operations "until and unless a certificate of occupancy is obtained." By this action he now "seeks to interfere with and embarrass the state court" and "he also seeks completely to thwart its judgment by relitigating in a trial *de novo* in a federal court the very issue that he has already litigated in the state court." Wilson v. Schnettler, 365 U.S. 381, 385, 81 S.Ct. 632, 635, 5 L.Ed.2d 620. The difficulties which would ensue if such sanctions were permitted are pointed out in the *Wilson* case.

"The mere possibility of erroneous application of the statute [ordinance] does not amount to irreparable injury necessary to justify a disruption of orderly state proceedings." Cameron v. Johnson, supra [390 U.S. 611, 88 S.Ct. 1341].

The ordinances in question are valid laws—and plaintiff does not contest the validity of the ordinance requiring "certificate of occupancy," only its construction—dealing "with conduct subject to regulation so as to vindicate important interests of society and * * * the fact that free speech is intermingled with such conduct does not bring with it constitutional protection." Cameron v. Johnson, 390 U.S. 611, 617, 88 S.Ct. 1339; Cox v. Louisiana, 379 U.S. 559, 564, 85 S.Ct. 476, 13 L.Ed.2d 487.

■ Even if it be conceded that plaintiff's right to operate a burlesque show is sufficient to bring into play the First Amendment, it does not necessarily follow that the right is not subject to reasonable regulations, or that the right to operate wiithout complying with building codes or obtaining proper permits is constitutionally protected. The Supreme Court has held that when "speech" and "nonspeech" elements "are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on the First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672.

■■ Those who seek federal intervention bear a heavy burden to show the state (or city) is not engaged in the use of its laws and police powers for legitimate ends, but is deliberately invoking it to harass or suppress First Amendment rights. Ordinarily the presumption the state's (city's) motive was law enforcement and not interference with speech is sufficient. Cameron v. Johnson, supra, dissenting opinion of Mr. Justice Fortas [390 U.S. 623, 88 S.Ct. 1335]. It is assumed state courts will observe constitutional limitations expounded by the Supreme Court. The possibility of error does not justify interference. Dombrowski v. Pfister, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22.

■■ Plaintiff asserts the ordinance enacted by the Council of the City of Chesapeake was enacted solely to prevent the operation of his theatre. While we need not reach this point in disposing of this matter, it should be noted that a legislative act is justified if within the power of the body, if the governmental interest is unrelated to the suppression of free expression, and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. It should not be voided merely because it may be found to be unwise legislation if the body had the power to enact it. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673. Nor should a court strike down an otherwise constitutional enactment on the basis of an alleged improper legislative motive. There is no foundation in law for saying "the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused

the power to be exerted." McCray v. United States, 195 U.S. 27, 56, 24 S.Ct. 769, 776, 49 L.Ed. 78; United States v. O'Brien, supra, 391 U.S. 383, 88 S.Ct. 1673.

While plaintiff urges that *Dombrowski* justifies his position, a review of that case does not support his contention. There involved was an excessively broad statute regulating expression itself. Here there is no "impermissible invasion of protected freedoms." A consideration of delay, inconvenience and cost to the parties does not justify this Court in taking over a determination of the issues. Chicago v. Fieldcrest Dairies, 316 U.S. 168, 172, 62 S.Ct. 986, 86 L.Ed. 1355.

The request for the injunction is denied. Further proceedings in this case are stayed while the parties repair to the state courts for a resolution of the questions here involved. Reetz v. Bozanich, supra.