UNITED STATES of America, Plaintiff-Appellee,

v.

Ruben NAVARRO, Defendant-Appellant.

No. 28895.

United States Court of Appeals, Fifth Circuit.

July 7, 1970.

R. Norvell Graham, Jr., San Antonio, Tex., for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

This appeal concerns the authority of federal courts to enjoin the use in state criminal proceedings of evidence obtained in violation of Federal Rules of Criminal Procedure.[1] Ruben Navarro was convicted in 1967 of possessing heroin in violation of 21 U.S.C. § 174. We reversed his conviction on appeal because heroin was seized under the authority of a search warrant which failed to meet the requirements of Rule 41(a), Federal Rules of Criminal Procedure, because not issued by a court of record.[2] Following our reversal, Navarro was indicted in state court for violation of state narcotics laws. The state charges arise from precisely the same circumstances which formed the basis for the overturned federal conviction—the heroin seized pursuant to the warrant which was determined to be defective according to federal procedural standards. Navarro instituted these proceedings in federal district court, (a) to enjoin federal officers from turning over the tainted evidence to state authorities or, in the alternative, to require federal officers to recapture the heroin if already in state hands, and (b) to enjoin federal officers from testifying in state court concerning the fruits of their illegal search. The district court refused to issue the requested injunctions and Navarro appeals. We affirm the district court's refusal to require federal officers to retain the heroin in their possession. However, we think the federal officers should be enjoined from testifying in the state proceedings concerning the narcotics which were not seized in accordance with federal law.

Our decision to enjoin the federal officers from testifying is based on Rea v. United States.[3] In that case Rea sought a federal court injunction to prevent federal officers from turning over to state authorities for use in a state prosecution evidence which had been obtained in contravention of the federal rules, and from giving testimony concerning such evidence in the state proceedings. A federal indictment based on the same evidence had previously been dismissed because the evidence had been suppressed by the federal court pursuant to a Rule 41(e) motion filed by Rea.[4] The Supreme Court, basing its decision solely on its "supervisory powers over federal law enforcement agencies,"[5] held

1. There is no contention that state law was violated in the procurement or execution of the search warrant involved.

2. Navarro v. United States, 400 F.2d 315 (5th Cir. 1968).

3. 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956).

4. The search warrant in *Rea* failed to meet the provisions of Rule 41(c), Fed.R.Crim. P. *Id.* at 215, 70 S.Ct. 292.

5. In *Rea* the Court expressly laid aside constitutional considerations:
 We put all the constitutional questions to one side. We have here no problem concerning the interplay of the

that the district court erred in failing to grant the requested injunction. Mr. Justice Douglas, writing for the Court, explained, "To enjoin the federal agent from testifying is merely to enforce the federal Rules against those owing obedience to them." [6]

The Court, over Mr. Justice Douglas's strong dissent, severely restricted the *Rea* decision in Wilson v. Schnettler,[7] but without affecting its applicability to the instant case. In *Schnettler* the Court refused to enjoin federal officers (a) from turning over the fruits of their allegedly illegal search to state officers for use in a state criminal trial and (b) from testifying in the state trial. The decision rests on three grounds. The first two relate to deficiencies in the petitioner's allegations in the complaint,[8] and the third involves considerations of comity. The Court cryptically omitted [9] any reference to its "supervisory responsibilities over federal law enforcement agencies" [10] and distinguished *Rea* on its facts:

> Indeed, the situation here is just the reverse of the situation in Rea. There, the accused had been indicted *in a federal court* for the unlawful acquisition of marihuana, and had moved in that court, under Rule 41(e) of the Federal Rules of Criminal Procedure (18 U.S.C. Rule 41(e), 18 U.S. C.A.), for an order suppressing the use of the marihuana as evidence at the trial. * * * The effect of that order, under the express provisions of that Rule, was that the suppressed property "shall not be admissible in evidence at any hearing or trial." [11]

The effect of this decision, in our opinion, is to restrict the applicability of *Rea* to situations in which an indictment has been instituted in federal court and a suppression order has been issued by the federal court.[12] The justification for an injunction in such situations is to protect the integrity of the suppression order.

This restriction of *Rea* does not affect its applicability to the instant case. Navarro was indicted, tried and convicted in federal court. We reversed the conviction because the evidence of guilt had been unlawfully seized. The effect of our opinion was to order the district court to suppress this evidence. Thus, despite *Schnettler's* limitation of *Rea*, the latter still seems to control in the circumstances presently before us.[13]

 The state correctly argues that Mapp v. Ohio [14] compromises or partially undermines the Court's decision in *Rea*, but it erroneously contends

---

Fourth and the Fourteenth Amendments nor the use which New Mexico might make of the evidence.

> \* \* \* \* \*

In this posture we have then a case that raises not a constitutional question but one concerning our supervisory powers over federal law enforcement agencies.

*Id.* at 216–217, 76 S.Ct. at 294.

6. *Id.* at 217, 76 S.Ct. at 294.

7. 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961).

8. The complaint failed to allege that the arrest was not based on probable cause and failed to state that petitioner did not have an adequate remedy at law. *Id.* at 383–384, 81 S.Ct. 632.

9. *See* Wilson v. Schnettler, 365 U.S. 387, 389, 81 S.Ct. 632 (1961) (Douglas, J., dissenting).

10. Rea v. United States, 350 U.S. 214, 217, 76 S.Ct. 292 (1951).

11. Wilson v. Schnettler, 365 U.S. 381, 386–387, 81 S.Ct. 632, 636 (1961).

12. In his dissent in *Schnettler* Mr. Justice Douglas complains:

> When we forsake Rea v. United States and tell the federal courts to keep hands off, we wink at a new form of official lawlessness. Federal officials are now free to violate the Federal Rules that were designed to protect the individual's privacy, provided they turn the evidence unlawfully obtained over to the States for prosecution. This is an evasion of federal law that has consequences so serious that I must dissent.

*Id.* at 397, 81 S.Ct. at 642.

13. The state argues that *Schnettler* restricts *Rea* to situations in which federal authorities issued the search warrant. A careful reading of *Schnettler* convinces us that no such result was intended.

14. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

that *Mapp* renders *Rea* inapplicable to the instant case. It is elementary that a court of equity should not act where there is an adequate remedy at law. *Mapp* offers a state legal remedy to defendants in state criminal proceedings where the state attempts to use the fruits of an unconstitutional search whether gathered by state or federal officers.[15] *Mapp* requires the exclusion of such evidence by the state court, and a failure to do so is a violation of due process of law reviewable by state appellate courts and the Supreme Court. Thus, *Mapp* obviates the necessity for an injunction by a federal court to protect a prior federal suppression order where the evidence in question was the product of an unconstitutional search. *Mapp* is of no benefit to Navarro, however, because the search and seizure was conducted in accordance with constitutional mandates. Only the more stringent federal rules were violated. A state court is not bound to protect the integrity of the federal rules by excluding evidence secured in violation of them, unless of course, the violation of federal rules is also a violation of constitutional imperatives.

■ Thus, it is our conclusion that *Schnettler* and *Mapp* do not alter the applicability of Rea v. United States [16] to the facts in the instant case and that the district court erred in failing to enjoin the federal officials from testifying in state court concerning the fruits of their search which was not conducted in accordance with rules which guide and direct federal officers.

■ We take a different view, however, concerning the actual physical evidence—the heroin—procured during the search of Navarro's home. Our conclusion is supported by decisions of the Supreme Court which have applied a "double standard" in this area of the law.[17] During two decades since Stefanelli v. Minard, the Supreme Court has adhered tenaciously to the principle that federal courts lack the authority to enjoin the use in state criminal proceedings of evidence obtained by *state* officers in violation of federal law.[18] Likewise, state officers may not be enjoined from testifying in state criminal proceedings concerning the fruits of their searches which do not meet the commands of federal rules.[19] On the other hand, as we have discussed above, the Court has enjoined federal officers from making the fruits of their unlawful searches available to state prosecutors. Given this dichotomy, the instant case was inevitable. The damning evidence was secured during a *joint* search of Navarro's apartment conducted by both

---

15. *See generally*, Cleary v. Bolger, 371 U.S. 392, 404 & 413, 83 S.Ct. 385, 9 L.Ed. 2d 390 (1963) (Douglas, J., dissenting). As to the meaning of *Rea*, the Court stated:

> We need not, however, determine in this instance the correctness of the lower courts' broad reading of the Rea Case, cf. Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620, on the basis of which the federal officers here were enjoined. For in any event Rea does not support the injunction against this petitioner, a state official. The Court in Rea was at special pains to point out that the federal courts were not there "asked to enjoin state officials nor in any way to interfere with state agencies in enforcement of state law," 350 U.S. at 216, 76 S.Ct. at 294, and further that "[n]o injunction is sought against a state official," id.,

[350 U.S.] at 217, 76 S.Ct. at 294. The opinion is barren of any suggestion that any inroads on Stefanelli were intended.

*Id.* at 398–399, 83 S.Ct. at 389.

16. 350 U.S. 214, 76 S.Ct. 292 (1956).

17. *See* Mapp v. Ohio, 367 U.S. 643, 657–658, 81 S.Ct. 168 (1961).

18. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct 118, 96 L.Ed. 138 (1951) was followed in Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961) (the Court refused, per curiam, to enjoin the use in state criminal proceedings of wiretap evidence secured by state officers in violation of federal law). *Stefanelli* was cited with approval in Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385 (1963).

19. Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385 (1963).

federal and state officers in circumstances which fall short of formalized federal procedure.

■ Moreover, considerations of comity lend strong support to our decision to refrain from requiring federal officials to retain control of the federally suppressed evidence under the facts disclosed by the record. As stated by the Court in Wilson v. Schnettler:

> We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused "should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial." Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S. Ct. 309, 310, 66 L.Ed. 607.[20]

The evidence here involved was *first* discovered by state officers who delivered it to federal agents in order to permit a prosecution in federal court.[21] The state officers making the discovery were lawfully on the premises pursuant to a warrant issued consistent with constitutional requirements. The heroin discovered in Navarro's apartment indicated that he was guilty of violating both federal and state law. In such circumstances an injunction is not necessary to insure a fair trial in the state court; it would threaten the vital and necessary cooperative spirit which must be maintained between state and federal law enforcement agencies as commanded by Congress;[22] and the stringent requirements of the injunctive process are not necessary to protect the integrity of the federal rules or this court's prior decision. In view of all the factors involved we are unable to conclude that because state agents were inclined, apparently in a cooperative spirit, to allow the federal prosecution to proceed initially, that such state officers are not now entitled to recover the heroin which they first seized and possessed.

Affirmed in part and in part reversed and remanded.

SIMPSON, Circuit Judge (concurring specially):

With considerable disinclination, I concur. Concededly the defect in the search was not of constitutional dimensions, as it consisted only of a failure to follow Rule 41(a), F.R.Crim.P., as to the type of judicial officer who issued the search warrant. As Judge Gewin's well written opinion points out (page 930), *Mapp* offers a state legal remedy against the fruits of an unconstitutional search, whether made by state or federal officers, to defendants in state criminal proceedings.

I am, nonetheless, very nearly persuaded that we should, on grounds of public policy, enjoin the use of the critical seized evidence in the long delayed state prosecution here. Permitting this type of shuttling of the prosecution back and forth between state and federal prosecutors and forums is an encouragement to wrongdoing on the part of venal officers.[1] Disrespect for the law is fed by the sort of unabashed forum shopping which our decision permits. This

---

20. 365 U.S. 381, 385, 81 S.Ct. 632, 635 (1961).

21. Navarro v. United States, 400 F.2d 315, 316 (5th Cir. 1968).

22. Wilson v. Schnettler, 365 U.S. 381, 386, 81 S.Ct. 632 (1961).

1. The percentage of such officers is doubtless small indeed compared to the overwhelming majority of conscientious enforcement officers, local, state and federal. Even so the widespread illicit traffic in drugs, liquor and other contraband, giving rise to the type of cases where the use vel non of the evidence seized is usually the decisive factor at trial, has historically provided a prolific breeding ground for corruption, extortion and "payola" or "ice". The rigidly exorbitant penalties for drug violations un-

is so even though zeal for conviction is the sole apparent motive.[2]

This case presents the "reverse silver platter" doctrine decried by Mr. Justice Goldberg in his special concurrence in Cleary v. Bolger, 371 U.S. 392, 404, 83 S.Ct. 385, 392, 9 L.Ed.2d 390, 398. The doctrine should be laid to rest on grounds of public policy, under the Supermacy clause of the federal constitution,[3] just as *Elkins*[4] laid to rest the obverse "silver platter" doctrine which grew up under *Wolf*.[5] The grounds for its burial differ but they seem to me to be equally compelling. Hopefully, the day will arrive when a majority of the Supreme Court will recognize and act upon these considerations. Otherwise, the now countenanced practice of whipsawing the defendant back and forth between courts of the two sovereigns will erode and eventually destroy the force and value of *Elkins*.

Meanwhile, today's controlling precedent being what it is, I concur, albeit reluctantly.

der both state and federal laws create added strong incentive for wrongdoing.

2. Navarro might never have been prosecuted in the courts of Texas but for the fact that the United States Attorney who prosecuted him in his original federal trial became in the interim a state district attorney and initiated the current state criminal proceedings. This infor-

mation is taken from Navarro's brief, but is not refuted by the appellee.

3. Article VI, Clause 2, U. S. Constitution.

4. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669.

5. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.