**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Rutherford McVEAN, Defendant-Appellant.**

**No. 30330**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1971.

Rehearing Denied March 10, 1971.

---

* ■ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of

New York et al., 5 Cir. 1970, 431 F.2d 409.

Lemuel S. Hunnicutt, St. Petersburg, Fla., for defendant-appellant.

John L. Briggs, U.S. Atty., Hugh N. Smith, Richard H. McInnis, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Donald Rutherford McVean was convicted by a jury on a two-count criminal information charging him[1] with the unlawful possession and unlawful sale of STP,[2] a hallucinogenic drug within the meaning of 21 U.S.C. § 321(v) (3), in violation of 21 U.S.C. §§ 331(q) (3) and 331(q) (2). He was sentenced to

[1.] The information filed on October 24, 1969, by the United States Attorney for the Middle District of Florida also named as a defendant one John Van de Steeg. On June 1, 1970, however, the United States Attorney dismissed the charge against Van de Steeg.

[2.] "STP" is the popular name for methyl-dimethoxy - alpha - methylphenethylamine; "DOM" is the drug's trade name.

serve two consecutive one-year terms in the custody of the Attorney General. We affirm.

On May 13, 1968, Officer Joseph Canali of the St. Petersburg Police Department, an undercover narcotics agent, met with Donald Rutherford McVean at McVean's home in St. Petersburg, Florida. There McVean sold Officer Canali two drug tablets for $20. The St. Petersburg Police Department then submitted the tablets to a chemist employed by the State of Florida for an analysis. The chemist's report indicated that the tablets contained STP. On the basis of Canali's affidavit that he had purchased the two STP tablets from McVean, the St. Petersburg Police Department secured a warrant to search the McVean residence. On May 17 Canali went back to McVean's home to buy a larger quantity of STP, ostensibly for resale. Shortly after the transaction was completed, several other police officers, armed with the search warrant, arrived at the McVean residence. After having been admitted into the house, they proceeded to arrest McVean. They also recovered from his person $260 of the marked money that the St. Petersburg Police Department had given Officer Canali with which to make the purchase. Canali later submitted the tablets that McVean had sold him for analysis. The chemist's report concluded that the tablets were indeed STP.

### I.

McVean argues first that the exclusion from federal juries of persons between the ages of 18 and 21 denied him the right to be tried by a jury of his peers. The thrust of this argument seems to be that accused persons within that age group, such as McVean, are deprived of the constitutional right of adults to a jury of their peers without being given the compensating special protections afforded juveniles. Significantly, McVean can cite no cases to support his argument.

■ It is the declared policy of the United States that all litigants in the federal courts who are entitled to a jury trial shall have their juries selected at random from a "fair cross-section of the community." 28 U.S.C. § 1861, as amended March 27, 1968, Pub.L. 90–274 § 101, 82 Stat. 54. But it has never been thought that federal juries must be drawn from a cross-section of the *total* population without the imposition of any qualifications. *See, e. g.,* United States v. Valentine, D.P.R.1968, 288 F.Supp. 957, 965.

■ The current statute delineating the qualifications of federal jurors, 28 U.S.C. § 1865, as amended, March 27, 1968, Pub.L. 90–274 § 101, 82 Stat. 58, provides that any person may be deemed qualified to serve on a federal jury unless he "is not a citizen of the United States twenty-one years old who has resided for a period of one year within the judicial district" or unless he suffers from any of the other disabilities listed in the statute. The Ninth Circuit has recently held in a Selective Service case that the statutory exclusion of minors from a jury panel did not violate the defendant's constitutional rights. United States v. Tantash, 9 Cir. 1969, 409 F.2d 227, 228, cert. den'd 395 U.S. 968, 89 S. Ct. 2115, 23 L.Ed.2d 754. *See also* George v. United States, 9 Cir. 1952, 196 F.2d 445, cert. den'd 344 U.S. 843, 73 S. Ct. 58, 97 L.Ed. 656. The First Circuit in dictum has approved the holding in the *Tantash* case. United States v. Butera, 1 Cir. 1970, 420 F.2d 564, 570 n. 15. We agree with those courts and hold that McVean has not been deprived of any rights guaranteed him by the Fifth and Sixth Amendments simply because Congress has chosen to limit eligibility to serve on federal juries to those persons who are 21 years or older.

## II.

Second, McVean contends that the search warrant under which the arresting officers entered his home was invalid under Florida law and that any evidence obtained as a result could not be used in a subsequent federal proceeding. McVean is right, of course, when he argues that federal authorities can not use in a federal criminal proceeding evidence that state officers have obtained illegally. *See* Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L. Ed.2d 1669. Nevertheless, we cannot agree that the search warrant under which the arresting officers entered McVean's home was invalid.

The Florida legislature has enumerated the circumstances in which state officers may secure a warrant to search a private dwelling:

> No search warrant shall issue * * * to search any private dwelling occupied as such unless it is being used for the unlawful sale, possession or manufacture of intoxicating liquor, or stolen or embezzled property is contained therein, or it is being used to carry on gambling, or it is being used to perpetrate frauds and swindles, or the laws relating to narcotics are being violated therein, or a weapon, instrumentality or means by which a felony has been committed is contained therein * * *

Florida Statutes § 933.18, F.S.A. The Florida state courts have held that in order to be valid the affidavit and search warrant must show on its face that the police have probable cause to believe that one of specific violations enumerated in § 933.18 is occurring or has occurred in the house. *See* Panzavecchia v. State, Fla.App., 3rd Dist. 1967, 201 So. 2d 762.

McVean argues that the affidavit upon which the search warrant was issued alleged a violation of the Florida drug abuse laws. He points out that by statutory definition the substances to which the Florida drug abuse laws apply do not include narcotics. *See* Florida Statutes § 404.01 F.S.A. This distinction between narcotics and other dangerous drugs, he argues, has been carried over into the statute authorizing search warrants. Thus, although § 933.18 authorizes the issuance of a warrant to search a house if the police have probable cause to believe that the laws relating to narcotics are being violated therein, in McVean's view it does not authorize the issuance of a warrant to search a house if the police merely believe that the drug abuse laws are being violated therein. In support of his argument, McVean points out that the Florida legislature amended § 933.18 in 1969 to include a violation of the drug abuse laws among the conditions for the issuance of a search warrant. *See* Florida Statutes § 933.18, F.S.A., as amended, May 15, 1969, Laws 1969, c. 69–18, § 1.

The Government, on the other hand, argues that when the Florida legislature authorized the issuance of a warrant to search a house if "the laws relating to narcotics are being violated therein," it had in mind the whole family of dangerous drugs—not only opium, cannabis, etc., but also hallucinogens such as STP. The Government also points to the 1969 amendment to § 933.18 for support; the amendment, it says, was merely a later expression of what the legislature had always intended.

To decide this case, we need not answer the question whether the term "narcotics" as originally used in § 933.-18 also includes hallucinogens. The statute itself provides a ready answer to McVean's contention that the search warrant was improperly issued. The final clause of that part of § 933.18 quoted above allows the issuance of a search warrant whenever the police have probable cause to believe that the "means by which a felony has been committed" is present in the house. The sale or possession of STP in violation of the Florida drug abuse laws is a felony, inasmuch as it is punishable by a term in

the state penitentiary. *See* Florida Statutes § 404.15, F.S.A. The STP tablets themselves thus constitute the "means" by which such felonies are committed. Canali's affidavit establishes that the St. Petersburg police had probable cause to believe that the Florida drug abuse laws "have been and are being violated" on the McVean premises and that STP tablets—the means by which those violations were being committed—could be found at the McVean house. Since we have concluded that the search warrant was properly issued under Florida law and since there can be no federal constitutional objections to the issuance of the warrant, it necessarily follows that the district court did not err in refusing to suppress any evidence obtained as a result of the search.

### III.

Finally, McVean contends that the Government committed reversible error by continually inquiring into an alleged sale of STP by McVean on May 13, 1968, an incident irrelevant to the crime charged, a sale of STP on May 17. He argues that under the rule in Johnson v. United States, 1943, 318 U.S. 189, 63 S. Ct. 549, 87 L.Ed. 704, the Government may not in a criminal prosecution inquire into a collateral crime unconnected with the offense charged. Therefore, he argues, the district court erred in not granting his repeated motions for a mistrial. We cannot agree.

██ It is well established that evidence of another crime may be admitted if it is substantially relevant for some purpose other than to show the probability that the defendant committed the crime charged because he is a man of criminal character. *See, e. g.,* United States v. Bradwell, 2 Cir. 1968, 388 F.2d 619, 622; United States v. Bozza, 2 Cir. 1966, 365 F.2d 206, 213. The Government introduced Officer Canali's statements concerning the events of May 13 to establish probable cause for the issu-

ance of the search warrant. The search warrant, in turn, provided the St. Petersburg police officers with their lawful authority to be in the McVean home on the evening of May 17. While at the McVean home, the officers witnessed the recovery from McVean of the marked money following his transaction with Officer Canali. The Government contends that this corroborative testimony was vital to establish McVean's guilt beyond a reasonable doubt. None of that testimony could have been admitted unless the proper predicate had been laid; indeed, the Government argues, unless the proper predicate had been laid, McVean would have forcefully objected to the admission of the police officers' testimony. The predicate in this case included the evidence of the search warrant itself and the testimony establishing the validity of the warrant. We agree with the Government's position and therefore conclude that the district court did not err in admitting Officer Canali's testimony concerning the events of May 13.

The judgment of the district court is affirmed.

SIMPSON, Circuit Judge (concurring specially):

I concur without reservation in Parts I and III of the Court's opinion.

As to Part II, I concur specially on the basis of my special concurrence in United States v. Navarro, 5 Cir. 1970, 429 F.2d 928, 932. It is unnecessary to repeat the views there expressed. Based on a purchase of STP on May 13, 1968, the state search warrant was issued May 17, 1968, and a state arrest was made that day. The state charges were dismissed as to McVean on November 27, 1968, after pending for more than six months in the state courts. Although the matter is not clearly spelled out in the record here, the inference is clear that the holding in Panzavecchia v. State, Fla.App., 3rd Dist., Fla.1967, 201

So.2d 762, was an effective bar to the state proceedings. There were no further proceedings for eleven months, until October 24, 1969, when the U. S. Attorney for the Middle District of Florida filed the information under Title 21, U. S.C., Sections 321(v), 331(q) (3) and 331(q) (2) upon which McVean was tried and convicted June 2 and June 3, 1970.

This is another example of the sort of "unabashed forum shopping", *Navarro*, supra, 429 F.2d page 932, between state and federal officers, which should not continue to receive judicial sanction. See the special concurrence of Mr. Justice Goldberg in Cleary v. Bolger, 1963, 371 U.S. 392, 404, 83 S.Ct. 385, 392, 9 L.Ed. 2d 390, 398. I recognize however that the practice is not forbidden under the present state of the decisions.