NOT DESIGNATED FOR PUBLICATION

No. 119,391

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERTO SIMON RINCON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Reno District Court, TRISH ROSE, judge. Opinion filed March 29, 2019. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and POWELL, JJ.

PER CURIAM:  Roberto Simon Rincon appeals the district court's denial of his K.S.A. 60-1507 motion following a preliminary hearing. For reasons we more fully explain below, we reject Rincon's assertions that the search warrant violated Rule 41 of the Federal Rules of Criminal Procedure and that his counsel was ineffective. Thus, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Following a bench trial on stipulated facts, and after preserving his right to appeal the district court's denials of his two motions to suppress, Rincon was convicted of several drug charges related to the possession of items used in the manufacturing of a controlled substance and for the manufacturing of methamphetamine. The district court sentenced Rincon to a controlling sentence of 156 months in prison. On direct appeal, Rincon challenged the district court's denials of his suppression motions. See *State v. Rincon*, No. 112,183, 2015 WL 9455560 (Kan. App. 2015) (unpublished opinion). While more expansively detailed in our court's decision of his direct appeal, we provide a relevant summary of the facts below.

On March 20, 2012, the Reno County District Court issued a protection from abuse (PFA) order against Rincon. At the PFA hearing, the victim advised the district court that Rincon possessed several firearms; Rincon was ordered to surrender the firearms to the Reno County Sheriff and was informed that the entry of the PFA order prohibited him from possessing firearms under federal law, see 18 U.S.C. § 922 (2012). However, Rincon failed to turn in his firearms as ordered.

On March 21, 2012, Reno County Sheriff's Detective Shawn McHaley applied for a search warrant for Rincon's residence and three vehicles Rincon was known to drive, including a white 1996 Pontiac Grand Prix. The warrant sought to recover firearms McHaley believed Rincon possessed in violation of 18 U.S.C. § 922(g)(8). The affidavit in support of the warrant stated Rincon had a current Reno County PFA order in effect against him as well as a 2010 Sedgwick County PFA order which would expire on April 14, 2012. The district court issued the search warrant, and that evening law enforcement observed Rincon leave his residence in the Grand Prix and followed him to see if he was heading towards the Sheriff's office. After deciding he was not, the officers stopped the vehicle, searched Rincon, and found a handgun with a round in the chamber. The officers

2

transported the vehicle to the Sheriff's office and recovered, among other things, a second handgun, an assault rifle from the trunk, hundreds of rounds of ammunition, an apparently active methamphetamine lab, and several items used to manufacture methamphetamine. The officers obtained a second search warrant for Rincon's residence.

Before his bench trial, Rincon had many attorneys appointed to represent him. The first motion to suppress, filed by Sam Kepfield, mainly argued that the district court should suppress the evidence obtained under the first search warrant because McHaley's supporting affidavit relied on stale information, failed to establish probable cause, and the good-faith exception did not apply because the district court had abandoned its neutral and detached role in issuing the warrant. After a hearing, the district court denied suppression on the grounds that it was bound by the four corners of the application and affidavit; probable cause did exist to support the warrant despite the existence of some stale facts; and, even assuming the warrant lacked probable cause, the officers had a good-faith belief that the warrant was valid.

Rincon's later attorney, Pam McLemore, filed a second motion to suppress that argued McHaley's affidavit was insufficient because it contained misstatements of material fact that, if removed, left the affidavit without sufficient facts to support probable cause. At a hearing, the State argued, in part, the district court should deny the motion because Rincon failed to file a sworn statement in support of his argument that the search warrant affidavit contained misstatements of material fact. In response, McLemore acknowledged she filed the motion late—she claimed it was due to a misunderstanding that another attorney was planning to enter the case—but requested, in place of the missing sworn statement, the district court consider the Reno County PFA hearing transcript which she claimed showed the district court had set no deadline for Rincon to turn in his weapons. McLemore also argued she believed the 2010 Sedgwick County PFA paperwork would show Rincon had not been personally served. The district court denied Rincon's motion on the grounds that even if the two statements were left out,

3

the facts in the affidavit still established probable cause to support the issuance of the warrant.

On direct appeal, Rincon challenged the district court's denials of his motions to suppress. Regarding the first motion to suppress, our court reviewed McHaley's affidavit in support of the search warrant and held the district court properly denied suppression.

> "[T]he information in the search warrant affidavit established a fair probability that contraband or evidence of a crime would be found in a particular place. See *Powell*, 299 Kan. at 695. The affidavit established that Rincon was subject to a 2010 Sedgwick County PFA order that was still in effect and prohibited him from possessing any firearms; that Rincon admitted to the judge at his March 20, 2012, hearing in Reno County that he possessed several firearms; that the judge ordered Rincon to turn over all his firearms to the sheriff's office but he failed to follow the court's order; and that Rincon normally carries handguns with him and often has an assault rifle in the vehicle he is driving and weapons at his residence. Thus, we conclude the district court did not err in denying Rincon's first motion to suppress. We need not address the State's alternative argument that even if the affidavit failed to establish probable cause, the good-faith exception would apply to save the search." *Rincon*, 2015 WL 9455560, at *10.

Concerning Rincon's second motion to suppress, the panel held that because Rincon filed no sworn statement supporting his allegations of McHaley's material misstatement of facts in the affidavit, the district court properly denied the motion as Rincon was procedurally barred from challenging the affidavit under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and *State v. Adams*, 294 Kan. 171, 178-79, 273 P.3d 718 (2012). *Rincon*, 2015 WL 9455560, at *10-11. Given the panel's findings that the district court had properly denied Rincon's motions to suppress, the panel did not analyze the correctness of the district court's denial based on the finding that the affidavit established probable cause without the two statements.

4

Ultimately, Rincon's convictions and sentences were affirmed. 2015 WL 9455560, at *11-16. Our Supreme Court denied Rincon's petition for review. 304 Kan. 1021 (2016).

On March 10, 2017, Rincon filed a pro se K.S.A. 60-1507 motion. Among other things, Rincon argued he had ineffective assistance of counsel because (1) his trial attorneys failed to seek suppression of the first search warrant under *United States v. Townsend*, 394 F. Supp. 736 (E.D. Mich. 1975), which would have resulted in the suppression of evidence because the warrant was based only on a violation of federal law and required the involvement of federal law enforcement officers, and (2) McLemore had failed to include a sworn statement with the second motion to suppress challenging McHaley's affidavit as containing material misstatement of facts.

The district court appointed counsel for Rincon and, in November 2017, held a preliminary hearing where attorneys for Rincon and the State presented argument. At the hearing, Rincon's attorney argued the district court should conduct an evidentiary hearing because both trial attorneys provided ineffective assistance of counsel in failing to request suppression under *Townsend*. In response, the State argued that K.S.A. 2017 Supp. 22-2502 permits Kansas judges to issue search warrants for anything used in the commission of a crime or any contraband or property considered part of the evidence, fruits, or instrumentalities of a crime under the laws of this state, any other state, or the United States. The State also argued that *Townsend* applies to situations where state and federal officials jointly execute a warrant in violation of Federal Rule 41 and it was unclear if the exclusion of evidence under *Townsend* applied in a state court. After taking the matter under advisement, the district court denied Rincon's motion.

Rincon timely appeals.

DID THE DISTRICT COURT ERR IN DENYING RINCON'S K.S.A. 60-1507 MOTION?

A.     *Standard of Review*

A district court has three options when reviewing a motion filed pursuant to K.S.A. 60-1507:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.'

> "Our standard of review depends upon which approach the district court used to dispose of the motion. When, as here, a court denies a 60-1507 motion based only on the motion, files, and records after a preliminary hearing, we are in as good a position as that court to consider the merits. So we exercise de novo review. [Citations omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Accordingly, our review is de novo.

B.     *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, guarantees a defendant the right to the effective assistance of counsel. 300 Kan. at 882.

> "Claims of ineffective assistance of counsel for deficient performance under the first category are the 'general rule' and controlled by *Strickland*. To prevail on such a

claim, a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. [Citations omitted.]" 300 Kan. at 882-83.

Our Supreme Court has explained:

"'The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and . . . [w]e must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.]'

"'[Under the second prong of the test for ineffective assistance of counsel], the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citations omitted.]'" *State v. Butler*, 307 Kan. 831, 852-53, 416 P.3d 116 (2018).

A reviewing court may first consider the prejudice prong of an ineffective assistance of counsel claim by assuming trial counsel's alleged errors amounted to deficient performance. *Edgar v. State*, 294 Kan. 828, 843, 283 P.3d 152 (2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

C.    *Does the doctrine of res judicata bar Rincon's claims?*

Preliminarily, the State argues we should decline to consider the merits of Rincon's claims under the doctrine of res judicata because Rincon previously challenged the denials of his suppression motions.

"'The applicability of res judicata is a question of law over which this court has unlimited review.' 'The doctrine of res judicata provides that "where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived." [Citations omitted.]'

"'In Kansas, there are four requirements to apply res judicata: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of persons for or against whom claim is made. In other words, "(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits." [Citations omitted.]'" *Bogguess v. State*, 306 Kan. 574, 579, 395 P.3d 447 (2017).

While Rincon's trial counsel, Greg Meredith—appointed after Kepfield and McLemore—raised ineffective assistance of counsel claims in a posttrial motion in his criminal case, the district court did not rule on the merits and denied the motion as untimely. On direct appeal, Rincon challenged the district court's denial of his posttrial motion as untimely, but the panel affirmed the district court. *Rincon*, 2015 WL 9455560, at *12-13. Even if Rincon had timely raised his claims, we could have declined to review the merits because our Supreme Court has expressed a general rule of discouraging ineffective assistance of trial counsel claims on direct appeal. See *Bogguess*, 306 Kan. at 580.

The State's claim fails because a prior court has not issued a final judgment on the merits of Rincon's ineffective assistance of counsel claims. Because there is no final judgment on the merits, the doctrine of res judicata does not procedurally bar review of Rincon's ineffective assistance of counsel claims.

D.  *Did Rincon's trial attorneys provide ineffective assistance of counsel in failing to raise a meritorious suppression challenge to the first search warrant?*

Rincon argues the trial attorneys who filed his motions to suppress provided ineffective assistance of counsel in failing to argue the first search warrant required suppression under *Townsend*. In response, the State argues the district court did not err in denying Rincon's claim because K.S.A. 2011 Supp. 22-2502 authorized the district judge to issue the search warrant and *Townsend* does not apply because Rincon was prosecuted in state, not federal, court.

> "Interpretation of . . . statutes is a question of law subject to de novo review.
>
> "When interpreting statutes, we begin with "'the fundamental rule that [courts] give effect to the legislature's intent as it is expressed in the statute. Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should be, speculating about legislative intent, or consulting legislative history."' We derive legislative intent by first applying the meaning of the statute's text to determine its effect in a specific situation. 'It is only when the language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain the statute's meaning.' [Citations omitted.]" *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

K.S.A. 2011 Supp. 22-2502(a) states in pertinent part:

> "(a)    A search warrant shall be issued only upon the oral or written statement, including those conveyed or received by electronic communication, of any person under oath or affirmation which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes a person, place or means of conveyance to be searched and things to be seized. Any statement which is made orally shall be either taken down by a certified shorthand reporter, sworn to under oath and made part of the application for a search warrant, or recorded before the magistrate from whom the search warrant is requested and sworn to under oath. Any statement orally

9

made shall be reduced to writing as soon thereafter as possible. If the magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, the magistrate may issue a search warrant for the seizure of the following:

(1)     Any things which have been used in the commission of a crime, or any contraband or any property which constitutes or may be considered a part of the evidence, fruits or instrumentalities of a crime under the laws of this state, any other state or of the United States. The term 'fruits' as used in this act shall be interpreted to include any property into which the thing or things unlawfully taken or possessed may have been converted."

McHaley sought and was granted a search warrant based on his belief that Rincon possessed firearms in violation of 18 U.S.C. § 922(g), which states in relevant part:

"(g) It shall be unlawful for any person—
. . . .
"(8) who is subject to a court order that—
(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; . . .
. . . .
"to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

10

In *Townsend*, the defendant argued the federal district court should suppress the evidence obtained under a search warrant issued by a state court because the warrant was supported with input from a federal agency, alleged only federal violations, resulted only in a federal prosecution, but was executed solely by state officials. The court explained that a search warrant is valid—and evidence obtained under a warrant is lawfully obtained—if the "'warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.'" 394 F. Supp. at 748 (quoting *United States v. Sellers*, 483 F.2d 37, 43 [5th Cir. 1973]). Ultimately, the federal court agreed with Townsend and suppressed the evidence based on a violation of Rule 41(c) of the Federal Rules of Criminal Procedure:

> "[T]he rule clearly contemplates that in cases such as the one at bar, where there is federal probable cause in the first instance, that there be federal participation and supervision of the undertaking. The standards are not 'merely blueprints of procedure for issuance of federal warrants.' (*Sellers*, at 44.) Rather, they are designed to protect the integrity of the federal police power by insuring some measure of control in purely federal matters to federal officers. If state officers were permitted to institute federal warrants without involving federal officers, they would be able to conduct federal investigations themselves. The unpredictable and certainly enormous, potential for abuse inherent in such an arrangement is manifest. Therefore, the warrant must fail on that basis.

> "In addition, since the warrant is based on federal probable cause, it should be subject to all Rule 41 requirements, as suggested in *Sellers*, supra. The fact that *Sellers*, *Brougher*[, 19 F.R.D. 79 (W.D. Pa. 1956),] and *Elliott*, [210 F. Supp. 357 (D. Mass. 1962)], involved joint execution of the warrant does not furnish a meaningful basis of distinction. Admittedly, when federal officers participate, there is a stronger reason for application of federal rules. But the purpose of the federal rules is not simply to provide guidelines for the actions of federal officers. 'They prescribe standards for law enforcement' in federal cases (*Rea v. U.S.*, 305 U.S. 214, 217, 76 S. Ct. 292, 294, 100 L. Ed. 233 (1955)); they are 'designed to protect the integrity of the federal courts.' (*Sellers*

11

at 43). Importantly, they are exclusive and mandatory and supersede state rules of procedure in the federal courts. (See *U.S. v. Virginia Erection Corp.*[,] 335 F.2d 868 (4th Cir. 1964); *U.S. v. DiRe*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948), dealing with the arrest context). Thus, federal rules should apply with equal force in cases involving federal probable cause, whether or not a warrant is executed jointly." 394 F. Supp. at 750.

Undermining Rincon's reliance on *Townsend* is the fact that the Fifth Circuit Court of Appeals overruled two cases on which the *Townsend* court relied on—*Navarro v. United States* (*Navarro I*), 400 F.2d 315 (5th Cir. 1968), and *Sellers*, 483 F.2d 37—finding the 1972 amendment to Rule 41 provided that the rule should apply only when a search warrant is issued at the request of federal officials. See *United States v. McKeever*, 905 F.2d 829, 833 (5th Cir. 1990).

Moreover, as the State correctly argues, *Townsend* concerns application of a federal rule violation for the suppression of evidence in a federal prosecution. The application of Rule 41 and its underlying policies do not necessarily mandate the suppression of evidence in state courts based on a rule violation, unless the rule violation also violated the Fourth Amendment. See *United States v. Navarro (Navarro II)*, 429 F.2d 928, 931 (5th Cir. 1970); Annot. 25 A.L.R. Fed. 247.

To illustrate, in *Navarro II*, the Fifth Circuit Court of Appeals reversed Navarro's federal drug conviction for a violation of Rule 41(a) which required the suppression of evidence obtained under a jointly executed search warrant with state officials. After the reversal, the State charged Navarro with violating state drug laws. Navarro sought an injunction to enjoin the use of the evidence obtained in violation of Rule 41(a) in state court. While the Fifth Circuit held it could enjoin the federal officers from testifying, it could not enjoin federal officers from turning over physical evidence to state officials and could not stop the state officers from testifying. The panel reasoned that *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)—which held all evidence obtained in violation of the United States Constitution was inadmissible in states courts—

did not help Navarro because the search and seizure did not violate constitutional mandates but violated only the stricter federal rule. *Navarro II*, 429 F.2d at 931-32. The Fifth Circuit also stated: "A state court is not bound to protect the integrity of the federal rules by excluding evidence secured in violation of them, unless of course, the violation of federal rules is also a violation of constitutional imperatives." 429 F.2d at 931.

Significantly, when reviewing a Rule 41 suppression challenge, the Tenth Circuit Court of Appeals requires reviewing courts first to determine if Rule 41 was violated and, if so, then to determine whether the rule violation amounts to a Fourth Amendment violation. If the reviewing court finds the violation is not a constitutional one, then the reviewing court must decide whether the defendant can establish if "'(1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.' Unless the defendant can establish prejudice or intentional disregard of the Rule, a non-constitutional violation of Rule 41 will not, by itself, justify suppression. [Citations omitted.]" *United States v. Krueger*, 809 F.3d 1109, 1114 (10th Cir. 2015).

Finally, states may "develop their own rules governing search and seizure so long as those rules follow the constitutional prohibition against unreasonable searches and seizures." *State v. McCloud*, 257 Kan. 1, 13, 891 P.2d 324 (citing *Ker v. California*, 374 U.S. 23, 34, 83 S. Ct. 1623, 10 L. Ed. 2d 726 [1963]), *cert. denied* 516 U.S. 837 (1995). Under K.S.A. 2011 Supp. 22-2502(a)(1), the district court had the authority to issue the search warrant for Rincon's alleged federal violation under 18 U.S.C. § 922(g)(8), so long as the judge found probable cause supported the crime and had a belief that Rincon possessed firearms in violation of the laws of the United States. Thus, it is unlikely the district court would have suppressed the evidence based on Rincon's alleged Rule 41 violation.

Rincon also argues that the Federal Rule 41 violation required the suppression of evidence because federal involvement was needed to execute a warrant based solely on a violation of federal law. But Rincon fails to establish that the alleged Rule 41 violation also violated the Fourth Amendment, i.e., by causing an unreasonable search or seizure. See *Navarro II*, 429 F.2d at 931-32. Rincon provides no pertinent authority to support his claim the alleged Rule 41 violation requires suppression in Kansas state courts, nor does Rincon explain why his claim is sound despite a lack of supporting authority. As a result, we consider his argument waived or abandoned. See *State v. Pewenofkit*, 307 Kan. 730, Syl. ¶ 2, 415 P.3d 398 (2018).

Rincon has not adequately shown that, but for his trial attorneys' alleged failures, there was a reasonable probability the result of the proceeding would have been different. Thus, the district court properly summarily denied Rincon's K.S.A. 60-1507 claim.

E.      *Did McLemore provide ineffective assistance of counsel in failing to include Rincon's sworn statement in support of his challenge to McHaley's affidavit as containing misstatements of material fact?*

Rincon argues McLemore provided ineffective assistance of counsel in failing to include his sworn statement with the motion to suppress challenging McHaley's affidavit as containing misstatements of material fact and as lacking probable cause to support the first search warrant.

In *Adams*, 294 Kan. at 178-79, the Kansas Supreme Court reviewed the

"principles outlined in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In *Franks*, the Supreme Court explained that an affidavit in support of a search warrant is presumed valid, and in most cases, the facts contained therein may not

14

be disputed by the party against whom the warrant is directed. The Court then outlined a limited exception.

"Under the *Franks* exception, an evidentiary hearing is required if a defendant shows by a sworn allegation that an affidavit in support of a search warrant is unreliable in that it: (1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact. In attacking the affidavit, the defendant must 'point out specifically the portion of the warrant affidavit that is claimed to be false[,] and a statement of supporting reasons should accompany the motion to suppress.'

"In other words, the *Franks* Court explained, if a defendant makes a prima facie showing that the affidavit is questionable, the trial court should set aside or excise the challenged portions of the affidavit and consider whether the remaining portions of the affidavit provide sufficient evidence of probable cause. If probable cause can be found without the excised statements, no evidentiary hearing is required. On the other hand, if there is not sufficient content in the remaining portion of the affidavit to support a finding of probable cause, the defendant is entitled to an evidentiary hearing to establish the affiant deliberately omitted a material fact, deliberately made a false statement, or made a statement with reckless disregard for the truth. [Citations omitted.]"

"Allegations of negligence or innocent mistakes are insufficient." *State v. Francis*, 282 Kan. 120, 128, 145 P.3d 48 (2006); see *Franks*, 438 U.S. at 155-56.

Rincon cannot show prejudice for two reasons. First, his claim that McHaley misstated the validity of the Sedgwick County PFA order lacks merit. Second, even if we assume McHaley deliberately misstated the district court's order for Rincon to turn over his firearms by 10 a.m. and we excise that statement from the affidavit, the remaining portions of the affidavit establish probable cause to support the search warrant. Thus, McLemore's failure to include a sworn statement with the motion to suppress had no reasonable probability of changing the outcome of the proceedings, and the district court

15

correctly denied Rincon's 60-1507 motion after a preliminary hearing. See *Sola-Morales*, 300 Kan. at 881.

> 1.    *The record conclusively shows McHaley did not deliberately misstate or state with reckless disregard for the truth that the Sedgwick County PFA order was valid.*

McHaley stated in the affidavit:  "On March 25, 2010, a [PFA] order was entered in Sedgwick County District Court case number 10 DM 1824 prohibiting Roberto Rincon from possessing any firearm. The order is currently valid, with an expiration date of April 14, 2012." Rincon argues McHaley deliberately misstated the material fact that the Sedgwick County PFA order was valid and argues that the PFA order was invalid because he was not personally served with and had no notice of the final order.

But Rincon's claim lacks merit and appears to confuse a district court's power to issue a PFA order with a district court's personal jurisdiction over the defendant to enter a valid PFA order. Personal jurisdiction is "the court's power over the defendant's person and is required before the court can enter an in personam judgment." *In re Marriage of Salas*, 28 Kan. App. 2d 553, 555, 19 P.3d 184 (2001). "Jurisdiction over the person of the defendant may be acquired only by issuance and service of process in the method prescribed by statute or by voluntary appearance." *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 812, 987 P.2d 1096 (1999).

A plaintiff seeking a PFA order must file with the court a verified petition "alleging abuse by another intimate partner or household member. K.S.A. 2016 Supp. 60-3104(a). . . . Once filed, the petition must be personally served on the defendant. K.S.A. 2016 Supp. 60-3104(d)." *Kerry G. v. Stacy C.*, 55 Kan. App. 2d 246, 250, 411 P.3d 1227 (2018). At the time the 2010 Sedgwick County PFA order was issued again Rincon, K.S.A. 60-3106(a) provided that within 20 days, the district court must conduct a hearing

16

where the plaintiff must prove the abuse allegation by a preponderance of the evidence and the defendant has the opportunity to present evidence on his or her behalf. If the district court finds sufficient evidence to support the protection order, K.S.A. 60-3108 requires that "[a] copy of any order under this act shall be issued to the plaintiff, the defendant and the police department of any city where the plaintiff resides." K.S.A. 60-3112 requires "[a]ll temporary, amended, final and other protection from abuse orders issued pursuant to [Kansas law] . . . shall be entered into the national criminal information center [NCIC] protection order file."

Although Rincon was not present at the Sedgwick County hearing, the record supports that Rincon was personally served with the verified petition and the district judge entered the PFA order upon finding jurisdiction over the parties. Rincon has not argued and the record supports that the Sedgwick County District Court had personal jurisdiction over Rincon to enter a valid PFA order. See K.S.A. 60-3104(d). The validity of a PFA order does not depend on whether the district court personally served Rincon with the final order. K.S.A. 60-3108 only requires a district court to issue a PFA order to the plaintiff, defendant, and the law enforcement agency where the plaintiff lives. Rincon's claim lacks merit because Kansas law does not require *personal* service of a PFA order on the defendant to make the order valid. See generally *State v. Hunter*, No. 113,864, 2017 WL 383384, at *3 (Kan. App.) (unpublished opinion) (finding K.S.A. 2015 Supp. 60-3104 requires personal service of verified petition but K.S.A. 60-3108 requires only issuance of PFA order), *rev. denied* 306 Kan. 1235 (2017). The record also contains an NCIC check completed on Rincon on March 21, 2012, showing the PFA order was issued on March 25, 2010, and expired on April 14, 2014.

As the record, motion, and files conclusively show McHaley neither deliberately misstated nor stated in reckless disregard for the truth that the 2010 Sedgwick County PFA order was valid, Rincon has not shown he was prejudiced by McLemore's failure to include a sworn statement with the motion to suppress for his *Franks* challenge.

17

2.    *Because the remaining portions of the affidavit establish probable cause to support the search warrant, Rincon cannot show prejudice.*

Rincon next argues McHaley deliberately misstated that "[t]he judge ordered Rincon to turn over all his firearms to the Reno County Sheriff's Office no later than 10:00 on March 21, 2012." Based on a review of the transcript from the 2012 Reno County PFA hearing, the district court did order Rincon to surrender his firearms to the Reno County Sheriff's office, but the order states no specific deadline. The record supports Rincon's claim that McHaley misstated the fact that the district court ordered Rincon to surrender his firearms by 10 a.m. the next day.

Assuming McHaley's misstatement relates to a material fact, to show prejudice Rincon must now establish that if the district court excised the statement, the remaining portions of the affidavit lack sufficient evidence of probable cause to support the search warrant. See *Adams*, 294 Kan. at 179.

Probable cause "'does not require evidence of each element of the crime or evidence to the degree necessary to prove guilty beyond a reasonable doubt.' [Citations omitted.]" *State v. Hicks*, 282 Kan. 599, 605, 147 P.3d 1076 (2006); see *State v. Dunn*, 233 Kan. 411, 414-15, 662 P.2d 1286 (1983). In deciding whether a supporting affidavit supplies probable cause, a judge reviews "the totality of the circumstances presented and makes 'a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation omitted.]" *State v. Powell*, 299 Kan. 690, 695, 325 P.3d 1162 (2014).

> "'When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing [judge] had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not

18

demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *State v. Hensley*, 298 Kan. 422, 428, 313 P.3d 814 (2013).

See also *Rincon*, 2015 WL 9455560, at *7 (applying standard).

Rincon cannot meet his burden to show prejudice because the remaining portions of the affidavit provide sufficient probable cause to support the search warrant. Because the Sedgwick County PFA order was valid, the affidavit establishes probable cause to believe Rincon possessed firearms in violation of 18 U.S.C. § 922, even without McHaley's statement that the district court ordered Rincon to surrender his firearms the next day by 10 a.m.

Rincon had a valid Sedgwick County PFA order issued against him in 2010 that expired on April 14, 2012. On March 20, 2012, a Reno County judge issued a PFA order against Rincon. At the hearing Rincon admitted he possessed several firearms, and the district judge ordered Rincon to turn over his firearms to the Sheriff's office. Rincon failed to follow the district judge's order. In the search warrant affidavit, McHaley stated that, from his knowledge and experience, gun owners typically carry one or more weapons in their vehicles and keep most of the firearm-related materials at home. McHaley requested a search warrant for Rincon's residence and three vehicles Rincon was known to drive.

Rincon cannot establish the prejudice prong of his ineffective assistance of counsel claim because McLemore's failure to include a sworn statement with the motion

to suppress had no reasonable probability of changing the outcome of the proceedings. Thus, the district court did not err in summarily dismissing Rincon's 60-1507 motion because the motion, files, and record conclusively show he was entitled to no relief.

Affirmed.